In re Lisa M. GARYBUSH, Debtor.

Lisa M. Garybush, Plaintiff,

v.

U.S. Department of Education,
et al., Defendants.

Bankruptcy No. 00–36111.
Adversary No. 01–3030.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Aug. 7, 2001.

Harry B. Plotnick, Cincinnati, OH, for Debtor.

Matthew J. Thompson, Nobile, Needleman & Thompson, L.L.C., Columbus, OH, for ECMC.

Dale Ann Goldberg, Dayton, OH, Assistant United States Attorney.

## DECISION AND ORDER DETERMINING STUDENT LOANS TO BE PARTIALLY DISCHARGED IN BANKRUPTCY

WILLIAM A. CLARK, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the standing General Order of Reference entered in this District. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

This matter is before the court upon the Complaint filed by Plaintiff Lisa M. Garybush [Adv. Doc. # 1–1]; the Answer of Educational Credit Management Corporation [Adv. Doc. # 9–1]; and the Answer of the United States of America to Complaint to Determine Dischargeability [Adv. Doc. # 12–1].

On March 6, 2001, the Debtor, Lisa M. Garybush, filed an adversary complaint against Defendants United States Department of Education and Great Lakes Higher Education Authority. In the complaint, the Debtor requests a discharge of her student loans with the Defendants asserting that repayment of the loans would be an undue hardship. Answers were filed by the U.S. Department of Education ("Department of Education") and Educational Credit Management Corporation ("ECMC"), substituted for Great Lakes Higher Education Authority.

The court held a hearing on the dischargeability of the student loans on July 31, 2001. In reaching a determination of the issue, the court considered the testimony of the witnesses, the exhibits admitted during the hearing, and the filings of the parties. The following decision and order constitutes the court's findings in accordance with Federal Rule of Bankruptcy Procedure 7052(a).

## FINDINGS OF FACT

The Debtor, Lisa M. Garybush ("Debtor"), filed her bankruptcy petition on November 17, 2000 and subsequently filed a complaint to determine the dischargeability of her student loans which make up a substantial portion of her total debts. These student loans were taken by the Debtor at various times from 1987 to 1995 to attend Sinclair Community College and Dret School. The loans are presently held by two entities, ECMC and the Department of Education. At the hearing, the two lenders and the Debtor stipulated to the current amounts due on the loans:

A. Itemized balance of amount due on loans held by ECMC:

| | |
|---|---|
| Principal: | $ 10730.18 |
| Interest: | $ 3321.56 |
| Costs: | $ 0.00 |
| Total: | $14,051.74 |

B. Itemized balance of amount due on loans held by the Department of Education:

| | |
|---|---|
| Principal: | $ 8991.79 |
| Interest: | $ 1634.78 |
| Costs: | $ 1731.80 |
| Total: | $12,358.37 |

These calculations reflect a reduction for the Debtor's voluntary payments, totaling approximately $1100.00, toward the loans held by the Department of Education. In addition, the calculations include credits for two Treasury Department offsets of the Debtor's tax refunds totaling approximately $3811.86. Besides the $1100.00 which the Debtor paid between 1994 and 1996, the parties have no other records of voluntary payments made by the Debtor toward her student loans.

With the aid of these loans, the Debtor finished a program at Dret School to become a certified nursing assistant. However, she was less successful with her

schooling at Sinclair Community College. The Debtor spent part of the four years at Sinclair on a waiting list for the nursing program. She eventually entered the nursing program, but quit prior to graduation for medical reasons associated with a high risk pregnancy. Consequently, she has not obtained a degree from Sinclair Community College.

Presently, the Debtor is 35 years old with five healthy children between the ages of 2 and 15. Her five children reside with her and her husband, David French, the father of the two youngest children. Anthony Hensley, the father of the Debtor's older three children, has been ordered to pay child support, but rarely meets this obligation. He presently owes approximately $6000.00 in arrears.

Although the Debtor never held a position in the healthcare field and has no interest in finishing her nursing degree, the Debtor has exhibited an ability to work at least part-time. In April and May of 2001, the Debtor held a job as a hostess at a Bob Evans restaurant where she made $6.50 an hour. Although working only part-time, she was able to gross $881.35 and take home $793.73 in net monthly income. However, the Debtor was only available to work when her mother could care for the children. Her mother has been diagnosed with a serious disease and can no longer babysit for the Debtor while she works. This difficult financial situation and the high cost of childcare have forced the Debtor to quit working so that she may take care of her children. Presently, the Debtor and her family rely solely on the income of her husband to meet the family's expenses and obligations. However, the Debtor is healthy and could work in the future when all of her children reach school age.

In the year 2000, the family's adjusted gross income from all sources, including part-time jobs of the Debtor, totaled $50,290.00. Of that, the Debtor's husband, David French, grossed $45,246.40 at DaimlerChrysler Corporation where he works as a parts expediter. The family income will likely experience a reduction this year due to Mr. French's loss of overtime at DaimlerChrysler as well as the Debtor's present unemployment. Mr. French, who makes $17.00 an hour, expects his income to be reduced to his base pay of approximately $35,000.00 a year based on a 40 hour week.

The family obligations listed in the Debtor's schedules are as follows:

| | |
|---|---|
| Rent: | $ 560.00 |
| Electricity: | $ 100.00 |
| Water: | $  30.00 |
| Telephone: | $  43.00 |
| Cable TV: | $  32.00 |
| Food: | $ 650.00 |
| Clothing: | $ 100.00 |
| Medical/Dental: | $  30.00 |
| Transportation: | $ 200.00 |
| Total: | $1745.00 |

Besides these modest expenses for a family of seven, the Debtor's husband has a support obligation for his daughter, Sarah French, from his previous marriage. This obligation is currently $558.45 per month (processing fee included). Adding this obligation, the household's monthly expenses total $2303.45.

The Debtor asserts that her present unemployment brought on, in part, by the high cost of childcare, prevents her from repaying her student loans. Consequently, the Debtor requests a discharge based on undue hardship under the provisions of the Bankruptcy Code.

### CONCLUSIONS OF LAW

Under Bankruptcy Code § 523(a)(8), student loan obligations are nondischargeable unless paying the student loans would be an "undue hardship"

on a debtor and her dependents. The statute provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

11 U.S.C. § 523(a)(8). The debtor carries the burden of proving an undue hardship. *Dolph v. Pennsylvania Higher Educ. Assistance Agency (In re Dolph)*, 215 B.R. 832, 836 (6th Cir. BAP 1998).

■ Undue hardship is not defined within the Bankruptcy Code. However, courts universally require proof of more than temporary financial adversity but less than utter hopelessness or abject poverty. *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir.1998). In *Hornsby*, the Sixth Circuit employed, but did not formally adopt, the following three part *Brunner* test from the Second Circuit to determine whether repayment of a student loan debt constitutes an undue hardship:

1.  First, the debtor must show that, based on her current income and expenses, she cannot maintain a minimal standard of living if the loans are repaid.

2.  Second, a debtor must show that the current financial hardship is likely to persist for a significant portion of the repayment period.

3.  Third, a debtor must demonstrate that she has made a good faith effort to repay the loans.

*Id.* at 437 (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2nd Cir.1987)).

■ The court will initially consider the first prong of the *Brunner* test and determine whether the Debtor's current financial status allows her to repay the student loans while maintaining a minimal standard of living. At the hearing, the Debtor's counsel argued that only the Debtor's income, and not that of her husband, should be considered in making this determination. The court disagrees with counsel's argument. Although the Debtor's husband has no direct obligation to repay the student loans, it is not unreasonable to believe that two spouses share their funds, as well as their expenses and the burdens of running a household. Thus, "courts have routinely considered the income of the debtor's spouse when determining whether the debtor's household income and expenses are in such a dire condition that a discharge of student loans is warranted." *Mitchell v. U.S. Department of Education (In re Mitchell)*, 210 B.R. 105, 108 (Bankr.N.D.Ohio 1996). *See also Greco v. Sallie Mae Servicing Corp. (In re Greco)*, 251 B.R. 670, 679–680 (Bankr. E.D.Pa.2000).

■ While the court has considered the entire household income in making its determination, the court concludes that this income provides insufficient funds for the Debtor to repay her student loans at the present time. The household faces a reduction in gross income to approximately $35,000.00 a year due to the Debtor's unemployment and Mr. French's loss of overtime hours. With five dependent children in the house and a monthly support obligation to a sixth child, the family has little excess income to pay toward student loans. Furthermore, the Debtor has no present

ability to obtain paying employment while caring for her children. The cost of child-care alone would consume her take home pay. Consequently, the court concludes that the Debtor meets the first prong of the *Brunner* test.

■ Next, the Debtor must demonstrate that her present inability to repay the student loans will continue for a significant portion of the repayment period. While the Debtor cannot obtain paid employment at this time, she is a healthy 35 year old woman who could return to work once her children are all of school age. Her youngest child will reach school age in less than four years. Furthermore, although the Debtor did not finish her degree program at Sinclair, she did obtain a certificate to be a nursing assistant which, the Debtor admitted, pays approximately $8.00 or $9.00 an hour in starting wages. Even at the lower paying part-time job she held at Bob Evans this year, the Debtor was able to make $6.50 an hour and take home $793.73 in net monthly income. With her husband's income paying the other household expenses, the Debtor could devote a significant portion of her future income to the student loan obligations. Therefore, the court determines that the Debtor's current inability to pay is unlikely to last into the future once her children are of school age.

■ Because the Debtor does not meet the second prong of the *Brunner* test, it is unnecessary for the court to proceed with the final prong requiring the Debtor to demonstrate a good faith effort to repay. However, the court notes for the record that the Debtor did make some voluntary payments toward her student loans between 1994 and 1996, totaling approximately $1100.00. These payments were made by the Debtor, or by members of the Debtor's family, even though the Debtor was unable to finish her degree program at Sinclair or obtain sustained employment

due to her children's needs. The court concludes that the Debtor would meet the good faith test.

■ Because the Debtor did not meet all three prongs of the *Brunner* test, she is not entitled to a full discharge of her student loans. Nevertheless, the court has the power, under 11 U.S.C. § 105(a), to provide a partial discharge. *See Hornsby*, 144 F.3d at 439 (holding that "[i]n a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act."). Under *Hornsby*, a partial discharge may be warranted even if all the requirements of an undue hardship are not met. *Id.* The Sixth Circuit has acknowledged several methods of granting partial discharges including discharging a part of the principal, interest, costs or attorney fees, deferring repayment for a specified period of time, or instituting a repayment schedule. *Id.* at 440. Structuring a partial discharge allows the court to grant some relief from an oppressive debt while requiring the Debtor to take some responsibility for repaying the student loans.

■ Because of the Debtor's present financial condition, the court determines that a partial discharge of the Debtor's student loans is appropriate. A significant portion of the student loan obligations represents interest, costs or other fees added to the principal amount of the loans. To relieve the Debtor's financial burden, the court will discharge the interest, costs and fees owed to ECMC and the Department of Education. This leaves a principal obligation of $10,730.18 owed to ECMC and $8991.79 owed to the Department of Education or a combined obligation of $19,721.97 that will not be discharged.

Furthermore, the court will defer repayment for four years so that the Debtor

may stay home with her young children until they are of school age. After the four year period has passed, the Debtor should be able to return to at least part-time work making $6.50 an hour and taking home approximately $793.73 per month. Because her husband's position allows the family to meet their other expenses, the Debtor should be able to devote $400.00 a month from this future income to pay her student loan obligations. Thus, in four years, the Debtor will be required to begin repayment, at a rate of $400.00 per month, to creditors ECMC and the Department of Education. Repayment will continue until the principal amount owed to these creditors is fully paid. With this schedule, the Debtor should able to pay off the combined principal of $19,721.97 in less than five years from the time that repayment begins.

WHEREFORE, the court grants Debtor Lisa M. Garybush, now known as Lisa M. French, a partial discharge of her student loan obligations as follows:

A. The court discharges all interest, costs and fees on the Debtor's student loan obligations to ECMC and the Department of Education. However, the combined principal of $19,721.97 owed by the Debtor to these creditors is not discharged. Of this amount, the Debtor owes $10,730.18 to ECMC and $8991.79 to the Department of Education.

B. The court grants a four year deferment to the Debtor before she must begin repayment of the $ 19,721.97 owed to ECMC and the Department of Education.

C. In four years, the Debtor must begin repayment of the principal amounts owing on her student loans at a rate of $400.00 per month. To reflect the difference in principal owed to each Defendant, the Debtor will be required to divide the monthly payments between ECMC and the Department of Education in the following manner:

Monthly payment to ECMC: $218.00
Monthly payment to the Dept. of Ed.: $182.00

These payments total the $400.00 which the Debtor should have in excess monthly income once her children are of school age and she can obtain employment.

D. The Debtor shall make her first monthly payments to the Defendants on or before September 1, 2005. Monthly payments will continue to be due on the first day of each subsequent month until the balances of $10,730.18 owed to ECMC and $8991.79 owed to the Department of Education are fully repaid. So long as the Debtor follows this payment schedule, no interest shall accrue on the principal amounts owed.

**It is so ordered.**