**In re Elizabeth Dale MYERS, Debtor.**

**Elizabeth Dale Myers, Plaintiff,**

v.

**Fifth Third Bank, et al., Defendants.**

**Bankruptcy No. 01–31952.
Adversary No. 01–3122.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

July 9, 2002.

Matthew J. Thompson, Columbus, Ohio, for the defendant, Educational Credit Management Corporation.

Dan D. Weiner, Kettering, Ohio, for the debtor/plaintiff, Elizabeth Dale Myers.

THOMAS F. WALDRON, Chief Judge.

THE COURT: This is the decision of the Court.

This is in Case Number 01–31952. The Adversary Number is 01–3122. This proceeding arises in a case that is referred to this Court by the Standing Order Of Ref-

erence entered in this district. It is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), which addresses the determination of the dischargeability of debts, specifically, the dischargeability of student loans pursuant to 11 U.S.C. § 523(a)(8). In such proceedings the Court is authorized to enter final judgment and we will do so.

In this circumstance, the Court believes it will be easier if we enter judgment. The Court will do so and copies will be distributed to counsel.

The following constitute the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and in reaching its determination, the Court considered the demeanor and credibility of the two witnesses who testified, the debtor, Elizabeth Myers Newman, and her husband, Robert Newman. The Court also considered all the exhibits which were admitted without objection by counsel. They consist of Plaintiff's Exhibits 1–5 and the Defendant ECMC's Amended Proposed Stipulation and List Of Witnesses (Doc. 27–1). Those documents become an operative part of the Court's final determination in this proceeding. Also admitted, without objection, is Defendant's Exhibit 1 discussed today and presented earlier in this proceeding.

The Court considered all of these, whether we refer to any specific evidence in the balance of this oral decision. Likewise, the Court notes the Court was particularly persuaded by the credibility of both witnesses. They presented testimony that was never substantially contradicted by any other evidence, particularly with regard to their own personal health issues and the health issues of their children.

Without changing the final judgment, the court reserves the right to add, alter, or delete any grammar, language or punctuation in this oral decision, so that the completed transcript of the court's oral decision, which may be entered as a separate filing in this proceeding, will correctly reflect the court's intention in determining this proceeding. Whether this oral decision is transcribed and entered as a separate filing, the determination today, which will be reflected in the order that will be entered, is the final appealable determination.

The Court now lists a series of citations to various legal authorities, which may be subsequently cited in abbreviated form during the balance of this oral decision. A number of these cases are familiar. They are controlling cases from the Sixth Circuit and other persuasive decisions from other judges in this district and outside this district: *Cheesman v. Tenn. Student Corporation (In re Cheesman)*, 25 F.3d 356 Sixth Circuit 1994. *Tenn. Student Assistance Corporation v. Hornsby (In re Hornsby)*, 144 F.3d 433 a Sixth Circuit decision in 1998. The progenitor case in this area, *Brunner v. New York State Higher Education Services Corporation*, 831 F.2d 395 a decision from the 2nd Circuit in 1987. *Dolph v. Pennsylvania Higher Education Assistance Agency, (In re Dolph)*, reported at 215 B.R. 832, a Sixth Circuit BAP decision in 1998. *Garybush v. U.S. Department of Education (In re Garybush)*, 265 B.R. 587, a decision from Judge Clark in this Court. *Ledbetter v. U.S. Department of Education (In re Ledbetter)*, 254 B.R. 714, a bankruptcy decision from Judge Hopkins in Cincinnati, Ohio. *Kirchhofer v. Direct Loans (In re Kirchhofer)*, 278 B.R. 162, a bankruptcy decision from the Northern District of Ohio (Judge Speer). The Court would also note the decision *Ivory v. United States (In re Ivory)*, 269 B.R. 890 (Bankr. N.D.Ala.2001) decided by Judge Cohen in Alabama, which will be referred to later in the decision.

We start with the basic statutory provision which is 11 U.S.C. § 523(a)(8). It provides that the discharge normally issued under 727 of the Code does not discharge an individual from any debt "for an education benefit, overpayment or loan made, insured, or guaranteed by a government unit, or made under any program funded in whole or part by a government unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, [then the operative phrase for our case today], unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents."

Additionally, at least in the Sixth Circuit, the provisions of 11 U.S.C. § 105(a) have become operative. This section authorizes this Court, as a Court of equity, to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

■■■ Although the Sixth Circuit has not formally announced a specific standard that Bankruptcy Courts must use in determining undue hardship issues in connection with student loans under § 523(a)(8), the Circuit, in at least two separate decisions, cited the Second Circuit's standards as listed in the *Brunner* case. See *Cheesman* and *Hornsby* from the Sixth Circuit. See also *Dolph*, a Sixth Circuit BAP case. The *Brunner* test as originally formulated requires the debtor to prove: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal standard' of living for her and her dependents, if forced to repay the loan; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment periods .... and, (3) that the debtor has made good faith efforts to repay the loans." The *Brunner* test is universally applied within the Sixth Circuit. (See *Garybush* (Judge Clark) and *Ledbetter* (Judge Hopkins)). The burden of proof to demonstrate undue hardship is on the debtors as would be the same burden concerning a partial discharge, if that remedy is appropriate under 11 U.S.C. § 105.

■■■ The concept of a partial discharge was originally foreshadowed in the Sixth Circuit's *Cheesman* decision that authorized the Bankruptcy Court to revisit a dischargeability question some 18 months following the trial. The more recent and significant case is the Sixth Circuit's decision, *Hornsby*, which expanded and explained this partial discharge concept. In *Hornsby*, the Circuit found that the Bankruptcy Court may fashion a range of partial discharge remedies pursuant to 11 U.S.C. § 105. The partial discharge would be warranted "where a debtor's circumstances do not constitute undue hardship as to part of the debt, but repayment of the entire debt would be an undue hardship....." (*Hornsby* at 440). The *Hornsby* decision collected a variety of decisions around the country, cited those decisions with approval and noted that the repayment schedule could be changed, interest or attorneys fees could be excused, and the Circuit specifically cited a decision in which the Bankruptcy Court treated each loan separately, in some cases discharging it, in other cases not, in other cases modifying it. "[O]ne has effectively accomplished a partial discharge by treating each student loan separately and discharging those student loans that worked an undue hardship." The citation was to a case called *Hinkle v. Wheaton College (In re Hinkle)*, 200 B.R. 690 (Bankr. W.D.Wash.1996) from the Western District of Washington and appears in the Circuit's decision.

■■■ This is the same procedure that Judge Hopkins followed in *Ledbetter*,

again, finding certain loans dischargeable and others not. The Court, that is the Sixth Circuit, didn't stop there. It ruled that a Bankruptcy Court can modify student loans even "when the circumstances don't constitute undue hardship." The Circuit stated, "Where a debtor's circumstances do not constitute hardship, some Bankruptcy Courts have thus given the debtor the benefit of a fresh start by partially discharging loans, whether by discharging an arbitrary amount of principal, interest accrued or attorney fees; by instituting a repayment schedule; by deferring the debtor's repayment of the student loan; or, by simply acknowledging that a debtor may reopen bankruptcy proceedings to revisit the question of undue hardship. We conclude that pursuant to the powers codified in § 105, the Bankruptcy Court here may fashion a remedy...." The decision then addresses the specifics of the *Hornsby* case.

In this Court, Judge Clark has issued at least three partial discharge decisions. The *Garybush* decision, earlier mentioned, and a case called *Miller v. Tiffin University*, Adversary Number 99–3632 (June of 2000), although that is an unreported case. Also, a case called *Williams v. Department of Education*, Adversary Number 00–3031 (October of 2000). Again, an unreported case, but similar to *Garybush* which is reported.

These decisions have deferred or in some cases discharged all accrued interest, cost and fees, granted four year deferment for any repayment, allowed no further interest if the payment schedule is completed by the debtor, extended or contracted the period where there were no payments made, or ordered that the prepetition interest rate did not commence until after a specific period of time and provided that the debtor was to pay the principal back at a minimum payment over a period of years with no interest.

The point out of all of these decisions is that even in circumstances where a debtor does not meet the undue hardship test in *Brunner*, Bankruptcy Courts, with Circuit approval, have consistently granted partial discharges.

Let me turn to the *Ivory* case in the circumstance because Judge Cohen's decision is worthy of attention for a number of reasons, particularly in connection with this case where there are a large number of children. There are eleven (11) people in the family, including nine (9) children, one of whom has specific needs that will require continuing attention. In *Ivory*, at page 899, Judge Cohen stated:

*a. Specific Items Necessary for a Minimal Standard of Living*

[7] *This Court believes that a minimal standard of living in modern American society includes these elements:*

*1. People need shelter, shelter that must be furnished, maintained, kept clean, and free of pests. In most climates it also must be heated and cooled.*

*2. People need basic utilities such as electricity, water, and natural gas. People need to operate electrical lights, to cook, and to refrigerate. People need water for drinking, bathing, washing, cooking, and sewer. They need telephones to communicate.*

■ We note in this case that although the debtor has ordinary telephone service, there was specific testimony concerning cell phones. In the circumstances of this case, given the number of people in the family and the health matters that are of concern, the Court finds that the cell phones meet minimum living standards in this particular case.

*3. People need food and personal hygiene products. They need decent cloth-*

*ing and footwear and the ability to clean those items when those items are dirty. They need the ability to replace them when they are worn.*

The Court notes that in the circumstances of this case, again, a husband and wife, plus nine children, we find that the testimony concerning expenses of clothing, along with the food issues, is more than justified and, in fact, rather than the number that was filed on the form as part of the exhibits and submitted, we accept the debtor's testimony that the total amount is substantially higher than what appeared on the form (Exhibit 3).

*4. People need vehicles to go to work, to go to stores, and to go to doctors. They must have insurance for and the ability to buy tags for those vehicles. They must pay for gasoline. They must have the ability to pay for routine maintenance such as oil changes and tire replacements and they must be able to pay for unexpected repairs.*

The Court notes, there was much discussion in this case and argument and evidence with regard to the three motor vehicles, including a camper. In the circumstances of this case, given the number of children and the demands on the family consistent with those children, we believe the three vehicles are appropriate and meet the minimum standards for this family in the circumstances of this case.

*5. People must have health insurance or have the ability to pay for medical and dental expenses when they arise. People must have at least small amounts of life insurance or other financial savings for burials and other final expenses.*

It is clear that the debtors do not have such savings in this case. They have no savings of any kind.

*6. People must have the ability to pay for some small diversion or source of*

*recreation, even if it is just watching television or keeping a pet.*

 In this case, the Court finds that the satellite T.V., the related school expenses and the camping expenditures meet these minimum standards of living and satisfy the first requirement of the *Brunner* test in this regard.

 Judge Cohen goes on in *Ivory* at page 890, to state, "There is nothing in the Bankruptcy Code that suggests that Congress did not intend for student loan debtors to procreate." The *Ivory* decision notes at page 911: "Absent an unequivocal pronouncement by Congress, or a court with authority to bind this Court, this Court will not find that an obligation to pay a student loan is superior to an individual's fundamental right of procreation." We adopt the analysis from the decision in *Ivory* and intend to follow it.

 The Court adds that the first prong of the *Brunner* test is extremely fact sensitive and a minimal standard of living for a person and her dependents will vary depending, obviously, on the number of dependents. In this case, the debtor has such an obligation under the laws of Ohio for herself, her three children from a prior marriage, her one child from her present marriage and potentially her present spouse in the coming years. The necessary expenses required to meet this minimum standard of living trump the obligation to pay a student loan when they conflict.

The issue in this case is the specific determination of the dischargeability of a series of student loans owed by the debtor.

We note that the initial filing in this case was on March 26, 2001 and this adversary was filed in July. The testimony, uncontradicted, establishes that the debtor is currently thirty-nine (39) years of age and has

both a B.A. and M.A. in education. She will earn, beginning in September, some $46,838.00 per year as a high school teacher in Miamisburg School District. She is married and lives with her husband, Robert Newman, 40 years of age, and nine children. She has three children from a prior marriage ages 11, 14 and 16. There are five children from Robert Newman's prior marriage ages 8, 10, 12, 13 and 14. The 8 year old child has cerebral palsy and a seizure condition. Additionally, she and Robert Newman have a son that was born on April 17, 2002. The Court had, as part of the colloquy with counsel for Education Credit Management Corporation, the defendant in this case, a discussion concerning the obligations under Ohio law that the debtor has for her own support, for the support of her three children from a prior marriage, for the support of the child out of this particular marriage and on a realistic basis, for her spouse, if his condition continues to degenerate. Separate from any familial relationship, or moral obligation to her stepchildren, the debtor has a present and future legally enforceable support obligation under Ohio law to six persons (the four children, herself and, again her husband, depending upon his future health and available funds). For these obligations she may only look to her own earnings and, perhaps a modest contribution from her ex-husband's disability of approximately $162.00 per month for her three children. The point is, it would be only her own available funds for the obligations to those six parties. While this statement is correct as a matter of Ohio law, it is significant and necessary to recognize that at the present time she and her children enjoy the benefits of her current husband's income. However, including her husband's income in such an economic analysis also requires the husband's expenses be included. He is similarly legally responsible for his five children, out of his separate income, one of whom has cerebral palsy and suffers from seizures. The debtor's husband, of course, shares with the debtor the legal responsibility for the support of their recently born child, again, assuming he can continue to work or otherwise contribute financially to the family. The conclusion is whether there is an analysis of the parties' joint income and debts, or an analysis of the individual debtor's separate income and debts, under either analysis, there is a present inability to pay the total amount of the existing student loan without the undue hardship and this inability will continue to persist into the foreseeable future.

The parties own a home, which is fortunate given the 11 members of their family and the significant cost of alternative housing. Mr. Newman works as machinist. He earns 20 some dollars per hour. Again, whether there is an income analysis separately and an expense analysis separately for the debtor and her spouse, or an analysis jointly and a joint expense analysis, the conclusion is that the actual monthly expenses, which appear close to $7,000.00 per month, match the approximate income of the family of approximately $7,000.00 per month. There simply are no available funds beyond reasonable minimal necessary living expenses.

The testimony varied during both the direct and cross examination; however, the Court determines that an accurate, realistic statement of debtor's combined expense is $7,000.00 and all indications are that the debtor's combined income and expenses for the foreseeable future would have less than approximately $100.00 a month in potentially available income beyond expenses. The Court states the potential $100.00 amount guardedly because we believe that that number could well be zero or a negative number rather than $100.00. The Court is persuaded there is some minimal amount of income over expenses; however, it is minimal.

In addition to the direct and cross examination by counsel, the Court inquired specifically about the motor vehicle issues, the camper issues and conducted a further inquiry of both the debtor and her spouse with regard to income and expenses. The Court has reached a determination, that some minimal amount, between either a negative number and a positive number of a $100.00 a month may exist; however, any such amount would only exist, beginning in September when the debtor's increased income becomes available. The greatest, reasonably anticipated damage to the debtor's economic circumstance is the realistic chance that the husband may not be able to continue work in the very foreseeable future, a period of one to two years. Another obvious area of continuing increased expenses are the health need of the husband's minor child with cerebral palsy and the seizure condition.

█ The Court is persuaded that the debtor has made a good faith effort to repay the claimed student loans consistent with her past, and her now present, financial resources. The Court recognizes that the past payment of only $30.00 per month in connection with a student loan (which is not before us today) may seem minimal; however, the Court notes the amount was consistently paid and the payment was only completed the last month in May, 2002. If the debtor had been engaged in a bad faith, rather than a good faith, attempt to repay, consistent with her available resources, she would not have devoted any funds to the repayment of any student loan. That her payments did not happen to be paid to this particular student loan creditor does not impact the Court's finding that she has made a good faith attempt to repay student loans, including the ones before us, during the period she appeared to have funds available. There is some record of such payment in Defendant's

Exhibit 1. The Court recognizes that she did not continue to make those payments, but given her circumstances, that is not surprising.

The economic history of both of these parties is clearly difficult. The major $46,000 student loan before us was incurred at a time when the debtor was on welfare, unemployed, with three minor children and had limited, at that time at least, financial prospects. The Court also notes the husband's economic history involves, at least, one prior Chapter 13 filing. There simply has not been, in either parties' circumstances, available income to apply in a manner other than to meet a minimal standard of living.

█ The Court determines that the debtor has met all three elements of the *Brunner* test as to the following loans stated in the Defendant's List (Doc. 27–1), and it would be an undue hardship for the debtor to repay any of these loans: Loan # 6 in the amount of $48,837.10, which is discharged in full; Loan # 4 in the amount of $6,057.97, which is discharged in full; Loan # 1 in the amount of $4,543.46, which is discharged in full.

The debtor, however, does have the ability to repay, without undue hardship, as partially discharged and modified by the Court's order to be entered, the following loans: Loan # 5 in the amount of $1,682.10; Loan # 3 in the amount of $930.00 and Loan # 2 in the amount of $2,860.37 for a total of $5,472.47. These payments will commence on October 1, 2002. These obligations are without interest or other charges. They are to be paid at a rate of $50.00 per month until they are paid in full. The Court will enter an order consistent with this decision.

Thank you counsel.