**In re Tia Cherie MANZI, Debtor.**

**Tia Cherie Manzi, Plaintiff,**

**v.**

**Susan P. Geenty and Farrell, Guarino & Boccalatte, P.C., Defendants.**

Bankruptcy No. 00–32686 (LMW).
Adversary No. 00–3118 (LMW).

United States Bankruptcy Court,
D. Connecticut.

Sept. 18, 2002.

Pasquale Young, Esq., Berdon, Young & Margolis, P.C., New Haven, CT, for the Debtor.

John L. Boccalatte, Esq., Farrell, Guarino & Boccalatte, P.C., Middletown, CT, for Susan P. Geenty, Esq.

Richard S. Sheeley, Esq., John L. Boccalatte, Esq., Farrell, Guarino & Boccalatte, P.C., Middletown, CT, for Farrell, Guarino & Boccalatte, P.C.

## MEMORANDUM OF PARTIAL DECISION

LORRAINE MURPHY WEIL, Bankruptcy Judge.

Resolution of this adversary proceeding requires a determination of whether a debt owing to a court-appointed guardian ad litem and/or attorney for the debtor's minor children from a prior marriage for services rendered to such minor children in connection with the dissolution of such marriage constitutes under the circumstances presented here a nondischargeable debt for child "support" within the purview of Bankruptcy Code § 523(a)(5) (and thus excluded from the purview of § 523(a)(15)).[1] A trial (the "Trial") was held in this adversary proceeding on

---

1. This adversary proceeding is a core matter within the purview of 28 U.S.C. § 157(b). Bankruptcy Code § 523(a) provides in relevant part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a govern-mental unit, or property settlement agreement ...; [or]

. . . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary

March 4, 2002.[2] The foregoing issue has been briefed and argued by the parties and the matter is ripe for this partial decision.

## I. FACTS AND PROCEDURAL BACK-GROUND [3]

The above-referenced debtor (the "Debtor") commenced this chapter 7 case by voluntary petition (Case Doc. I.D. No. 1)[4] filed on June 14, 2000. The Debtor filed her schedules (the "Schedules") and Statement of Financial Affairs (the "Statement") contemporaneously with her petition.[5] (See id.)

The Debtor is an unemployed (or at least was unemployed at the time of the Trial (Trial Transcript at 14)) divorced woman and a single mother of three children: a daughter (now ten years of age) and twin sons (now six years of age).[6] The Debtor's Schedules show her residence (the "Residence") as a single-family home in Killingworth, Connecticut listed at a value of $230,000 (Case Doc. I.D. No. 1, Schedule A—Real Property), and personal property aggregating $13,531.54 (Case Doc. I.D. No. 1, Schedule B—Personal Property). The Schedules also show liens on the Residence aggregating $207,426.00. (Case Doc. I.D. No. 1, Schedule D—Creditors Holding Secured Claims.)

The Schedules show unsecured debt aggregating $98,438.95 (Case Doc. I.D. No. 1, Schedule F—Creditors Holding Unsecured Nonpriority Claims). Of that debt: approximately $19,400 is labeled as credit card debt; about $4,000 is labeled as debt in respect of "medical services;" about $38,500 is labeled as debt in respect of legal services connected to the Debtor's 1999 marital dissolution action (discussed below)[7] and a debt owing to her former husband and/or her former in-laws of approximately $37,000. One of the "unsecured" debts listed on the Debtor's Schedule F (and one of the secured claims against the Residence listed on the Debtor's Schedule D as a "judgment lien") is a debt (the "Judgment Debt") to Susan Geenty, Esq. of Farrell Guarino & Boccalatte, P.C. in the amount of $11,687.00. (Case Doc. I.D. No. 1, Schedules D and F.)[8] Among the exemptions (under Connecticut state law) listed in the Debtor's

---

for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor ....
11 U.S.C.A. § 523(a) (West 2002).

2. The record of testimony given at the Trial is referred to hereafter as the "Trial Transcript."

3. The following facts either were developed at the Trial or otherwise appear as indicated in the file of this chapter 7 case.

4. Entries in the chapter 7 case docket are referred to herein as "Case Doc. I.D. No. ___."

5. The Schedules and Statement are included in Case Doc. I.D. No. 1. The court does not necessarily accept the factual statements made by the Debtor in the Schedules and Statement as true. Rather, at this stage of the proceedings and given the limited disposition provided for below, it is sufficient for the court merely to note that such statements have been made.

6. The respective dates of birth of the children appear in Plaintiff's Trial Exhibit G.

7. That those legal services are related to her 1999 divorce appears either in Schedule F and/or appears elsewhere in the record.

8. Both Attorney Geenty and her firm are named as defendants (collectively, the "Defendants") in this adversary proceeding. It is unclear what the respective interests of the Defendants are in respect of the Judgment Debt. For the purposes of simplicity (and because it makes no analytical difference), the court will discuss the Judgment Debt as if it is held solely by Attorney Geenty.

Schedule C are: a $75,000 homestead exemption in respect of the Residence; and an exempt IRA (the "IRA") of a value (as of the petition date) of $10,830.40. (Case Doc. I.D. No. 1, Schedule C—Property Claimed as Exempt.)[9]

The Debtor's Schedule I shows monthly income as of the petition date of $1,415.00; that amount is composed primarily of alimony and child support payable by her former husband in the monthly amount of $1,280.00. (Case Doc. I.D. No. 1, Schedule I—Current Income of Individual Debtor(s).) Schedule I also shows that an additional $135.00 per month in income comes in the form of food stamps. (*Id.*) Schedule I further shows that the Debtor has living with her the three children from her former marriage. (*Id.*) The Debtor's Schedule J shows monthly expenses (as of the petition date) of $3,079.77 of which $1,555.40 per month is to pay the mortgage and property taxes on the Residence. (Case Doc. I.D. No. 1, Schedule J—Current Expenditures of Individual Debtor(s).)[10] The Debtor's Statement shows that, as of the petition date, the only income she had received from "employment or operation of business" since the end of 1997 was $4,000 as a result of "[p]art time employment with [the] U.S. Census Bureau [for the 2000 census]." (Case Doc. I.D. No. 1, Statement, item 1.)

The Chapter 7 trustee in this case filed a Report of No Distribution on July 19, 2000. (Case Doc. I.D. No. 9.) The Debtor received her chapter 7 discharge by order entered on October 24, 2000. (Case Doc. I.D. No. 12.) One June 21, 2000, the Debtor filed a motion (the "Section 522(f) Motion") to avoid the Defendants' judgment lien on the Residence pursuant to Bankruptcy Code § 522(f). (Case Doc. I.D. No. 4.) On July 7, 2000, the Defendants responded to the Section 522(f) Motion by filing an objection thereto, in which they alleged that the Judgment Debt was a debt for nondischargeable child "support" within the purview of Section 523(a)(5) and, thus, the lien securing it was not subject to avoidance under Section 522(f). (Case Doc. I.D. No. 8.) In turn, on July 20, 2000, the Debtor responded by filing the Complaint (Adv. Doc. I.D. No. 1, the "Complaint")[11] that initiated this adversary proceeding.[12] Among other things, the Complaint seeks a determination that: (a) the Judgment Debt is not a nondischargeable "support" obligation within the purview of Bankruptcy Code § 523(a)(5); (b) the Judgment Debt is not a nondischargeable obligation within the purview of Section 523(a)(15); and (c) the Judgment Debt is otherwise dischargeable under Section 523(a). The Defendants filed an

**9.** No objections were filed to the Debtor's Schedule C, and the exemptions listed therein have become effective. *But cf.* 11 U.S.C. § 522(c)(1) (bankruptcy exemption not enforceable against 11 U.S.C. § 523(a)(5) "support" obligation).

**10.** The Debtor's Statement shows that Washington Mutual Bank, F.A. had commenced an action in 1998 to foreclose its mortgage on the Residence, but that that action had been "withdrawn" as of the petition date. (Case Doc. I.D. No. 1, Statement, item 4a.) Washington Mutual Bank, F.A. has not moved for relief from stay during the case. The Debtor has been making her periodic mortgage pay-

ments (in whole or in part) by making withdrawals from the IRA. (Trial Transcript at 14.) For the present, at least, that appears to have brought "peace" with the mortgagee. Family members help the Debtor meet her and her children's living expenses. (Trial Transcript at 14.)

**11.** Entries in respect of the docket for this adversary proceeding hereafter are referred to as "Adv. Doc. I.D. No. ___."

**12.** On October 10, 2000, an order entered denying the Section 522(f) Motion on technical grounds, not bearing on the merits. (Case Doc. I.D. No. 11.)

answer (Adv. Doc. I.D. No. 7, the "Answer") pursuant to which, among other things, they asserted that the Judgment Debt is a nondischargeable child "support" obligation within the purview of Section 523(a)(5). Although the Defendants asserted that the issue of dischargeability/nondischargeability of the Judgment Debt under Section 523(a)(15) was not "relevant" (*see* Answer ¶ 7), they did not dispute that, if the Judgment Debt was not a nondischargeable child "support" obligation within the purview of Section 523(a)(5), that the Debtor "does not have the ability to pay ... [the Judgment Debt] ... from her income or property not reasonably necessary to be expended for the maintenance or support of her and her children as provided by § 523(a)(15) of the Bankruptcy Code." (Complaint ¶ 7.) Thus, such allegation is deemed admitted by the Defendants. *See* Fed. R. Bankr.P. 7008; Fed.R.Civ.P. 8(d) ("Averments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading.").

The background of the Judgment Debt (together with certain other relevant facts) is as follows. Marital dissolution proceedings were commenced by the Debtor against her former husband in Connecticut Superior Court for the Judicial District of Middlesex at Middletown in April, 1998. Among other things, the issues of child custody and visitation were disputed bitterly by the couple. As a result and in order to give the children a voice in the matter, the court appointed Attorney Geenty as guardian ad litem and/or attor-

ney for the children, leaving it to Attorney Geenty's discretion to chose her own role.[13] Attorney Geenty initially appeared as attorney for the children, but later appeared as guardian ad litem for them and retained special counsel. Attorney Geenty had substantial involvement in respect of the subject dissolution action. Most of her involvement related to the issues of child custody and visitation, but she had some involvement with respect to the issue of the amount of child support to be paid by the father as well. With Attorney Geenty's assistance, the couple ultimately entered into a stipulation on the issues of child custody and visitation pursuant to which, among other things, the Debtor shares joint legal custody of the children but the children live primarily with the Debtor. It is undisputed that Attorney Geenty fulfilled her role(s) appropriately and the Debtor does not dispute the reasonableness of Attorney Geenty's fees (i.e., the amount of the Judgment Debt). In any event, Attorney Geenty was awarded $11,681.00 (the Schedules say "$11,687.00") at the final hearing before the state court. (Trial Transcript at 12.)

Judgment was entered in the marital dissolution in December, 1999. Besides dissolving the marriage, the judgment required the Debtor's former husband to quitclaim his interest in the Residence to the Debtor, required the Debtor to keep the children insured for health insurance purposes under the "HUSKY Plan" (if eligible),[14] required the Debtor's husband to pay $220 per week to the Debtor as child

---

**13.** *Cf.* Conn. Gen.Stat. §§ 45a–132 ("Appointment of guardian ad litem for minors ..."); 46b–54 ("Counsel for minor children. Duties"); 46b–62 ("If ... the court appoints an attorney for a minor child, the court may order the father ... [or] mother ..., individually or in any combination, to pay the reasonable fees of the attorney ....").

**14.** *See* Conn. Gen.Stat. §§ 17b–289 to 17b–303 ("HUSKY and HUSKY Plus Act"). The HUSKY Plan is a program of medical coverage for children of low income families. The Debtor testified at the Trial that the children are, in fact, covered by the HUSKY Plan. (Trial Transcript at 24.)

support, and required the Debtor's husband to pay periodic alimony to the Debtor in the amount of $100 per week until September 15, 2002 (and then in the amount of $50 per week until September 15, 2004.) (Defendant's Trial Exhibit 11.) The alimony obligation was nonmodifiable as to term. (*Id.*) The parties were each made responsible for one-half of the Judgment Debt (among other items) and were ordered each to pay their respective shares within sixty days of the judgment.[15]

In ordering the foregoing (and other) financial provisions, the state court relied, at least in part, upon the following findings. The Debtor has a B.S. Degree in business from Long Island University. She was born on March 29, 1962 and was in good health at the time of the state court's ruling. The last outside employment the Debtor held before the birth of the twins ended in October, 1996 when she left that employment. At that time, the Debtor's annualized earnings from that employment were $33,000 per year. (Defendants' Trial Exhibit 10 at 3.) The Debtor

> endeavored to go back to work full time approximately eight weeks ... [after the birth of the twins]. And then the decision was made that the Madison Learning Center was far too expensive for two children full time, based upon the earnings she was getting and the net and the after tax dollars.

(*Id.* at 10–11.) There was some possibility of day care for the children from family members, but the Debtor had reservations about the conditions to which the children would be exposed. (*Id.* at 28–29.)

## II. DISCUSSION

 Federal law governs the question of what constitutes nondischargeable child "support" within the purview of Section 523(a)(5). *Peters v. Hennenhoeffer (In re Peters)*, 133 B.R. 291, 295 (S.D.N.Y.1991), *aff'd*, 964 F.2d 166 (2d Cir.1992). *See also Pauley v. Spong (In re Spong)*, 661 F.2d 6 (2d Cir.1981). "[A] debt ... [can] be in the 'nature of support' under section 523(a)(5) even though it ... [does] not legally qualify as alimony or support under state law." *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir.1986). It is a "well-established principle of bankruptcy law that dischargeability must be determined by the substance of the liability rather than its form," *Spong*, 661 F.2d at 9. *See also Brody v. Brody (In re Brody)*, 3 F.3d 35, 38 (2d Cir.1993). The nature of the putative "support" obligation is a mixed question of law and fact. *Peters*, 133 B.R. at 294 n. 3.

 The law governing substantially this issue was well summarized by the court in *Peters, supra.* In *Peters*, an attorney had been appointed to represent the chapter 7 debtor's minor son in a custody dispute between the boy's parents. The court ordered the debtor to pay the attorney's fees as "additional child support." Thereafter, the attorney asserted that fee debt against the debtor as a nondischargeable child support obligation. The bankruptcy court ruled for the attorney. The debtor appealed to the district court, arguing that the bankruptcy court erred because it had not engaged in a fact-specific inquiry to determine whether other factors indicating support were present (the implication being that the bankruptcy

---

15. (*Id.*) It is unclear whether the scheduled amount of the Judgment Debt accurately reflects any payments made. Because the amount of the Judgment Debt is uncontested, the court will assume that the amount of the Judgment Debt accurately reflects all payments made upon it. Subsequently, the Debtor's former husband himself became a title 11 debtor. (Trial Transcript at 11.)

court allegedly had automatically accepted the state court's label of the obligation as "additional child support" as dispositive). *Id.* at 296. The district court affirmed the result reached by the bankruptcy court not based on whether the fee obligation was "child support" under state law but, rather, on a general *federal* rule.

This court cannot add much to the discussion in *Peters* and, accordingly, reproduces it immediately below at some length:

> It is ... generally accepted that fees incurred on behalf of a child are nondischargeable because they are deemed to be support when those fees are inextricably intertwined with proceedings affecting the welfare of the child. *See In re Laney,* 53 B.R. 231 (Bankr.N.D.Texas 1985); *Matter of Coleman,* 37 B.R. 120 (Bankr.W.D.Wis.1984); *In re Morris,* 14 B.R. 217 (Bankr.D.Colo.1981). *But see In re Lanza,* 100 B.R. 100 (Bankr. M.D.Fla.1989) (finding that fees owed to a guardian ad litem appointed to represent child in a custody dispute were dischargeable). *Compare In re Aughenbaugh,* 119 B.R. 861 (Bankr.M.D.Fla. 1990) (attorneys' fees rendered in connection with litigation concerning child visitation rights and discovery disputes are not in the nature of support).
>
> The "nature of support" is a broadly construed term in bankruptcy law. Unlike state child support laws which require merely that child support orders ensure adequate basic living expenses for the child ..., federal bankruptcy courts addressing the term in the context of guardian ad litem fees have broadened the meaning of "support" pursuant to 11 U.S.C. § 523(a)(5)(B) to include any services inuring to the benefit of the child in a litigation connected with a matrimonial dispute. *See e.g., In re Laney,* 53 B.R. at 231. The reason for such a policy is clear. In any matri-monial action, whether it concerns the divorce, maintenance, support, custody, or post-decree proceedings implicating any of the foregoing, it is essential that each party be able to adequately represent its interests; accordingly, attorneys' fees owed to spouses are deemed to be in the nature of support. *See In re Spong,* 661 F.2d at 9; *In re Schwartz,* 53 B.R. 407, 411 (Bankr.S.D.N.Y.1985). Similarly, as the appointment of a guardian ad litem is for the purpose of effectively representing a minor child's best interests in a matrimonial dispute ..., the fees owed to the guardian ad litem can be deemed to be in the nature of support.

Peters argues that this court is obligated to undertake a fact-specific inquiry to determine whether other factors indicating support were present. *See Forsdick,* 812 F.2d at 802–803; *In re Ridgway,* 108 B.R. at 156. To this end, he points out that the California court, while labelling [sic] the fees to Hennenhoeffer "additional child support" was concurrently declining to make specific awards for Brendan's daily maintenance, he then being in the custody of his mother.

As noted earlier, what constitutes support is determined under federal bankruptcy law. In general, the federal law is that attorneys' fees incurred by a guardian ad litem acting on behalf of a child during a custody dispute are "in the nature of support." The reasons for this view are clear. The support of a child does not just rest upon daily sustenance. The protection of the child's interests in court by the guardian ad litem constitutes a measure of support for the child whose value to the child cannot be diminished. Indeed, it is in the child's best interests to have custody matters fully and fairly litigated. Insuring this is done is part of the parents' duty to

support the child. *In re Hicks,* 65 B.R. at 229.

*Peters,* 133 B.R. at 295–96.[16] The court finds persuasive the *Peters* rationale for the rule that fees for guardians ad litem and attorneys for the debtor's minor children incurred in connection with support and/or custody and/or visitation disputes in the debtor's divorce proceeding *generally* are nondischargeable.[17]

However, *Peters* articulates a *general* rule rather than a *per se* rule. Specifically, *Peters* acknowledges that "facts [might exist] . . . warranting an exception to this rule," *Peters,* 133 B.R. at 296. Recently, the Bankruptcy Appellate Panel for the Tenth Circuit also acknowledged that exceptions may be held to exist to the general rule of nondischargeability upon a finding of "unusual circumstances." *See Lowther v. Lowther (In re Lowther),* 266 B.R. 753, 757–760 (10th Cir. BAP 2001), *appeal docketed,* No. 01–6359 (10th Cir. Oct. 2, 2001). In *Lowther,* as here, the attorney's fees were asserted to be a nondischargeable obligation (there by the debtor's former husband) against the debtor who was the minor child's custodial parent. The *Lowther* court acknowledged the general rule of nondischargeability but held that the fee debt there at issue nevertheless was dischargeable because "unusual circumstances" existed in that "the [d]ebtor does not have the ability to pay this debt without severe impairment of her

ability to support the child . . . ," *Lowther,* 266 B.R. at 760.

This court finds the *Lowther* court's rationale persuasive because to construe the Section 523(a)(5) definition of child "support" otherwise would yield a result at odds with the public policy behind that statutory provision. Specifically, to find a third-party claim to be a nondischargeable debt under Section 523(a)(5) when payment of such claim by the debtor would severely impair the debtor's ability to support the very children whom Section 523(a)(5) was designed to protect would stand that statute on its head. *Cf. Citibank, N.A. v. Emery (In re Emery),* 132 F.3d 892, 895 (2d Cir.1998) (finding that "court may depart from the plain language of a statute if literal application of the statute will produce a result demonstrably at odds with the intentions of the statute's drafters") (internal quotation marks omitted).

■ The Defendants argue that they have made a *prima facie* case that the Judgment Debt is a nondischargeable child support obligation and they should prevail here because the Debtor failed to carry her burden at the Trial to make out a *prima facie* case of unusual or exceptional circumstances. (*See* Trial Transcript at 61–62.) The court agrees with the Defendants to the extent that it concludes that they have made out a *prima facie* case of nondischargeability and that the Debtor failed to make out a *prima facie* case of

---

**16.** Making such fee debts nondischargeable encourages attorneys to accept such appointments thus furthering the federal public policy described in *Peters.*

**17.** The court deems any distinction between fees of a guardian ad litem for minor children and a court-appointed attorney for minor children to be immaterial for these purposes. Similarly, it is immaterial that, in this case, the state court did not label Attorney Geenty's fees as additional "child support." As *Peters*

makes clear, the present or absence of such label is immaterial for these purposes. The Debtor urges the court to adopt the view stated in *Weed v. Lanza (In re Lanza),* 100 B.R. 100 (Bankr.M.D.Fla.1989), that only fees of this type incurred in connection with support issues (as opposed to custody and visitation issues) are nondischargeable. The court here rejects the *Lanza* view as against the weight of the better-reasoned authority. *See, e.g., Peters, supra.*

"unusual circumstances" at the Trial.[18] If it were only the Debtor's interests at stake here, the court might be inclined to agree with the Defendants that they now are entitled to judgment against the Debtor. However, as is apparent from part I of this memorandum, *supra*, the welfare of the Debtor's minor children also may be at stake here. Accordingly, the public policy behind Section 523(a)(5) militates in favor of relieving the Debtor from the consequences of her (perhaps) imprudent trial tactics, and in favor of giving her the opportunity (at a continued trial) to show (if she can) that "unusual circumstances" exist here warranting an exception to the general rule of nondischargeability in respect of the Judgment Debt.

At this stage of the proceedings, it is unnecessary for the court to determine exactly how severe the impairment of the Debtor's ability to support her minor children would have to be to constitute the requisite "unusual circumstances." The court leaves the parties to argue that point at the continued trial. However, the court is sensitive to the need for any exception to the general rule of nondischargeability to be relatively narrow for there is a risk here that otherwise the exception might swallow up the general rule in every case where the debtor is the custodial parent. The parties also are placed on notice that, at the continued trial, the court may consider the propriety of staying the enforcement of the Judgment Debt for some limited period of time even if the court determines that the Judgment Debt is nondischargeable. *Cf. Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998) (holding that, pursuant to Bankruptcy Code § 105(a), bankruptcy court could "fashion remedy" (including deferment of debt payment on student loan) to take debtor's "oppressive financial circumstances" into consideration); *Matter of Roberson*, 999 F.2d 1132 (7th Cir.1993) (affirming bankruptcy court's two-year deferment order in student loan case); *Garybush v. United States Dep't of Education (In re Garybush)*, 265 B.R. 587 (Bankr. S.D.Ohio 2001) (granting four-year deferment of repayment of reduced student loan debt). The court also leaves the parties to make out their respective legal and factual cases in respect of that point at the continued trial.

### III. CONCLUSION

For the reasons set forth above, the court concludes that the Defendants have made out a *prima facie* case that the Judgment Debt is a nondischargeable "support" obligation within the purview of Section 523(a)(5). A separate order will issue scheduling a status conference to discuss with counsel an appropriate schedule for further trial in this proceeding (a) to permit the Debtor to present evidence showing that (i) the Judgment Debt nevertheless should be found to be dischargeable under Section 523(a)(5) and/or (ii) en-

---

**18.** A creditor seeking a determination that a debt is nondischargeable bears both the initial burden of going forward with evidence of, and the risk of nonpersuasion on, that issue. *See Bank–One Rockford, N.A. v. Mayer (In re Mayer)*, 173 B.R. 373, 377 (N.D.Ill.1994), *aff'd*, 51 F.3d 670 (7th Cir.1995); *Stone v. Stone (In re Stone)*, 199 B.R. 753, 757 (Bankr. N.D.Ala.1996). By definition, a *prima facie* case of nondischargeability shifts the burden of going forward to the debtor to produce countervailing evidence and/or to make out a *prima facie* case of an exception to a general rule of nondischargeability. *See Catron v. Catron (In re Catron)*, 164 B.R. 912, 916 n. 2 (E.D.Va.1994), *aff'd*, 43 F.3d 1465 (4th Cir. 1994); *Securities Investor Protection Corp. v. Nappy (In re Nappy)*, 269 B.R. 277, 296 (Bankr.E.D.N.Y.1999). However, the risk of nonpersuasion at all times remains with the creditor. *In re Catron, supra*.

forcement of the Judgment Debt should be stayed for some specific period, and (b) to permit the Defendants to present contrary evidence.[19]

**SO ORDERED.**

---

**19.** If any of the parties believe that a further opportunity for discovery would be appropriate in advance of the continued trial, such matter may be raised at the status conference.