**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: LORNA KAYE NYS,

                *Debtor,*

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

                *Appellant,*

         v.

LORNA KAYE NYS,

                *Appellee.*

No. 04-16007

BAP No.
NC-03-01438-
MaMcP

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Perris, McManus, and Marlar, Bankruptcy Judges,
Presiding

Argued and Submitted
February 15, 2006—San Francisco, California

Filed April 26, 2006

Before: Stephen Reinhardt, Richard A. Paez, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

4763

**COUNSEL**

Miriam Hiser, San Francisco, California; Curtis P. Zaun, Educational Credit Management Corporation, St. Paul, Minnesota, for the appellant.

Christopher G. Metzger, Eureka, California, for the appellee.

**OPINION**

TALLMAN, Circuit Judge:

Debtor-Appellee Lorna Kaye Nys ("Nys") filed an adversary complaint in bankruptcy court to have her student loans discharged under 11 U.S.C. § 523(a)(8). The trial court found from the evidence that Nys's current income is "not nearly enough to pay off her student loans," and that it "is the most she can reasonably be expected to earn in the foreseeable

future." The bankruptcy court nonetheless ruled against Nys, concluding that "undue hardship" requires the showing of an "exceptional circumstance" beyond the mere inability to pay.

Nys appealed to the Bankruptcy Appellate Panel ("BAP"). In a published decision, *Nys v. Educ. Credit Mgmt. Corp.* (*In re Nys*), 308 B.R. 436 (B.A.P. 9th Cir. 2004), the BAP reversed and remanded, directing the bankruptcy court to reevaluate Nys's claim using the correct legal standard. The BAP reasoned that the three-prong test we adopted in *United Student Aid Funds, Inc. v. Pena* (*In re Pena*), 155 F.3d 1108 (9th Cir. 1998),[1] for determining whether the repayment of student loans would impose an "undue hardship" on the debtor or her dependents requires the debtor to show "additional circumstances" that prove that her inability to pay in the present will likely persist for a significant portion of the loan's repayment period. *Nys*, 308 B.R. at 444. We affirm the BAP. "Undue hardship" does not require an exceptional circumstance beyond the inability to pay now and for a substantial portion of the loan's repayment period.

I

Nys filed a Chapter 7 bankruptcy petition in the Northern District of California on June 12, 2002.[2] Shortly thereafter, she filed an adversary complaint against Educational Credit

---

[1]In *Pena*, we adopted the three-prong test set forth by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987) (per curiam). Under this test, the debtor must show: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Id.* at 396. Hereinafter, we will refer to this test as the *Brunner* test.

[2]We extract most of the facts from the BAP's published opinion, confirmed by our own independent review of the record.

Management Corporation ("ECMC"), the holder of her federally guaranteed student loans, to have those loans fully discharged under 11 U.S.C. § 523(a)(8).[3]

Between 1988 and 1992, Nys took out thirteen separate student loans to finance an Associate of Arts Degree in Science and Drafting Technology from the College of the Redwoods and a Bachelor of Arts Degree from Humboldt State University. In 1996, Nys began working at Humboldt State University as a drafting technician. She is employed as a Drafter II, the highest drafter position available at Humboldt State. In 2002, Nys's net gross income was $40,244. Because she pays $140 per month to her retirement plan, her 2002 W-2 shows an adjusted gross income of $36,981.74. The bankruptcy judge found that this income was about as high as one could reasonably expect in Humboldt County given her profession and educational background. The evidence also showed that Nys lived in a modest home in Fortuna, California, which was in need of extensive repairs. At the time of trial, Nys was 51 years old. She plans to retire at age 65, and at that time her income will drop considerably.

Nys borrowed approximately $30,000 through student loans. At the time of trial, she owed approximately $85,000 in accumulated principal and interest. Nys's net monthly income was $2,299.33. She claimed $2,295.05 in monthly expenses.

Because she was granted deferments, Nys made no payments on her student loans until August 2001, when she received a wage garnishment notice from ECMC's

[3]In relevant part, § 523(a)(8) provides that a Chapter 7 discharge does not discharge an individual debtor from any debt "unless excepting such debt from discharge . . . would impose an *undue hardship* on the debtor and the debtor's dependents, for . . . an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8) (emphasis added).

predecessor-in-interest. To avoid garnishment, Nys paid $130 per month on her student loans. She made those payments until May 2002, when ECMC notified her that her monthly payments would increase to $917.56.

At that time, Nys contacted the William D. Ford Loan Program ("Ford"), *see* 34 C.F.R. § 685.100, in an attempt to establish an affordable payment plan. The parties dispute what type of payment plan Ford offered Nys. Nys claims that Ford informed her that her monthly payments would still be between $800 and $900, and that she would need to pay an initial assessment fee of almost $14,000. ECMC argues that Nys is eligible for an Income Contingency Repayment Plan[4] and that under this program her monthly payment would be between $389 and $453.[5]

During the trial, Nys argued that she is still unable to make payments on her student loans, and that because of additional circumstances, her inability to pay will continue into the foreseeable future. Her "additional circumstances" were that (1) she is 51 years old (14 years from legal retirement age), (2) she has "maxed out" in her career and her income is as high as it is ever going to be, (3) her house is in need of substantial repairs, and (4) she commutes daily at some distance in an old automobile with high mileage that will soon need to be replaced.

The bankruptcy court ruled for ECMC, finding that Nys had not proved "undue hardship." Although it concluded that "Nys is clearly incapable of repaying more than a portion of

---

[4]Nys claimed that she was never offered an Income Contingency Repayment Plan. The trial court did not resolve this discrepancy given its disposition of the case.

[5]At the time of the trial, Nys was still able to claim one of her children as a dependent. As a result, ECMC argued that her payments under the Ford Program would have been $389 per month. Now, if she can no longer claim any dependents, ECMC acknowledges that her monthly payment would be approximately $453.

her student loans and this situation will almost certainly persist for the foreseeable future," it found no undue hardship because "[Nys] ha[d] demonstrated no additional circumstances beyond the mere inability to pay." The bankruptcy court rejected Nys's argument that "undue hardship exists any time the debtor cannot afford to pay the loans now or in the foreseeable future." It found that "[e]xceptional circumstances must be shown to meet the second prong of the *Brunner* test."

The BAP reversed the bankruptcy court because it concluded that the bankruptcy court had applied the wrong legal standard when addressing the second prong of the *Brunner* test. As the BAP characterized the test, "[a]dditional circumstances are any circumstances, beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period." *Nys*, 308 B.R. at 444. Because the bankruptcy court required the additional circumstances to be exceptional, the BAP reversed and remanded for an application of the correct "additional circumstances" test.

## II

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b), the BAP had jurisdiction under 28 U.S.C. § 158(b), and we have jurisdiction under 28 U.S.C. § 158(d). We independently review the bankruptcy court's decision. *Rifino v. United States* (*In re Rifino*), 245 F.3d 1083, 1086 (9th Cir. 2001). The bankruptcy court's findings of fact are reviewed for clear error and its application of the legal standard is reviewed de novo. *Id.* at 1086-87.

## III

[1] The issue we must decide is whether "undue hardship" requires an additional or exceptional circumstance beyond an impervious financial situation that will continue to impede the debtor's ability to make payments on her student loans and

maintain a minimal standard of living. Section 523(a)(8) provides that a student loan is not dischargeable "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). "Undue hardship" is not defined in the Bankruptcy Code; however, we and a majority of the other circuits have expressly adopted the *Brunner* test. *See supra* note 1.

When it adopted the *Brunner* test, the Second Circuit explicitly incorporated the reasoning of the district court *in toto*. *Brunner*, 831 F.2d at 396. The district court had throughly analyzed the limited legislative history pertaining to the "undue hardship" requirement, *Brunner v. N.Y. State Higher Educ. Servs. Corp.* (*In re Brunner*), 46 B.R. 752, 753-55 (Bankr. S.D.N.Y. 1985), and therefore, because the legislative history was influential in the development of the *Brunner* test, we will discuss it again here.

Congress provided little in the way of express legislative intent specifically addressing the "undue hardship" requirement when it passed the statute. *Id.* at 753. Nonetheless, the phrase "undue hardship" was lifted verbatim from a bill proposed by the Commission on the Bankruptcy Laws of the United States ("Commission"), and with no clear indication to the contrary, we may impute the Commission's intent to Congress. *Id.* at 754; *see also McClendon v. Cal-Wood Door* (*In re Wadsorth Bldg. Components, Inc.*), 711 F.2d 122, 124 (9th Cir. 1983) (looking to the Commission's report to interpret congressional intent). The Commission recognized that there was a high incidence of students filing for bankruptcy after finishing their education. *Brunner*, 46 B.R. at 754.

> This "rising incidence" contravened the general policy that "a loan . . . that enables a person to earn substantially greater income over his working life should not as a matter of policy be dischargeable before he has demonstrated that for any reason he is

> unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt."

*Id.* (quoting Report of the Comm'n on the Bankr. Laws of the United States, H.R. Doc. No. 93-137, at 140 n.15 (1973) [hereinafter Report of the Comm'n] (alteration in original)). By requiring a showing of undue hardship,

> the Commission envisioned a determination of whether the amount and reliability of income and other wealth which the debtor could reasonably be expected to receive in the future could maintain the debtor and his or her dependents at a minimal standard of living as well as pay off the student loans.

*Id.* (citing Report of the Comm'n, H.R. Doc. No. 93-137, at 140-41 n.17).

Therefore, Congress sought to prohibit a "garden-variety debtor" from discharging student loans, especially when that "garden-variety debtor" will presumably use her loan-funded education to substantially increase her income in the near future. *See Rifino*, 245 F.3d at 1087 (" 'Congress viewed garden-variety hardship as [an] insufficient excuse for a discharge of student loans . . . .' " (quoting *Pena*, 155 F.3d at 1111) (second alteration in original)). What separates a "garden-variety debtor" from a debtor who can show "undue hardship" is the realistic possibility that a "garden-variety debtor" could improve her financial situation in the future. With increased financial stability, a debtor can make payments on her student loans and maintain a minimal standard of living. In comparison, forcing debtors who cannot reasonably be expected to increase their future income to make payments on their student loans when it causes them to fall below a minimal standard of living constitutes an "undue hardship."

**[2]** Consequently, in an effort to comply with congressional intent and to provide some guidance for the lower courts that are primarily responsible for administering the "undue hardship" standard, the Second Circuit adopted the three-prong test formulated by the district court. *See Brunner*, 831 F.3d at 396. The dispositive issue in this appeal is what is meant by the phrase "additional circumstances" as it is used in the second prong. ECMC argues that the "[m]ere inability to repay one's student loans in the future has never been the test for determining undue hardship." ECMC contends that "*Pena* and *Brunner* require a debtor to show not just future inability to repay, but that 'additional circumstances' preclude future repayment." In other words, ECMC contends that "undue hardship" requires the debtor to show (1) the inability to pay now and in the foreseeable future and (2) some additional or exceptional circumstance beyond the mere inability to repay. ECMC misinterprets our case law and the purpose of the "additional circumstances" language in the *Brunner* test.[6]

**[3]** To be eligible for a discharge of student loans, the debtor must prove that her present inability to pay will likely

---

[6]Under the test as proposed by ECMC, any decision within the debtor's control could not qualify as an "additional circumstance." Therefore, a person who has chosen to go into a certain field and who, despite her best efforts, has topped out in her career with no possibility of future advancement cannot obtain a discharge of her student loans. ECMC argues that the debtor must either uproot her family and move, or switch careers to try to obtain a higher paying job. Because a college education is expensive no matter what field a student chooses, we cannot say that a debtor who, in good faith, chooses a certain field but ultimately cannot increase her income to a point that allows her to repay her student loans, is foreclosed from seeking a discharge. Furthermore, courts have recognized that a lack of useable job skills may constitute "additional circumstances." *Pa. Higher Educ. Assistance Agency v. Birrane* (*In re Birrane*), 287 B.R. 490, 497 (B.A.P. 9th Cir. 2002). Clearly, a student makes a choice as to which skills she will pursue during her education. We cannot fault a debtor for making such a choice when, later on, it turns out that despite her best efforts her skills are simply not sufficient to allow her to earn adequate sums to repay accumulated principal and interest.

persist throughout a substantial portion of the loan's repayment period. *See Pena*, 155 F.3d at 1114 (finding that the debtors satisfied the *Brunner* test in part because "their unfortunate financial situation was likely to continue for a substantial portion of the repayment period"). The focus of this inquiry is the debtor's financial situation.

**[4]** We recognize that courts have found it difficult to predict future income. Consequently, courts have required debtors to present "additional circumstances" to prove that their present financial situation will persist well into the future, preventing them from making payments throughout a substantial portion of the loans' repayment period. *See, e.g.*, *Brunner*, 831 F.2d at 396 ("Predicting future income is . . . problematic. Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.' "). These "additional circumstances" are meant to be objective factors that courts can consider when trying to predict the debtor's future income; the debtor does not have a separate burden to prove "additional circumstances," beyond the inability to pay presently or in the future, which would justify the complete or partial discharge of her student loans.

In support of its contrary position, ECMC cites the Sixth Circuit's decision in *Cheesman v. Tennessee Student Assistance Corp.* (*In re Cheesman*), 25 F.3d 356 (6th Cir. 1994). In *Cheesman*, although the Sixth Circuit discussed *Brunner*, it did not expressly adopt *Brunner's* three-prong test. *Id.* at 359. Rather, it found that the debtor's "loans were dischargeable under any undue hardship test the [trial] court may have used." *Id.* In reaching that conclusion, the Sixth Circuit stated that "there is no indication that the Cheesmans' financial situation will improve in the foreseeable future." *Id.* at 360.

ECMC argues that *Cheesman* presents an easier test because the debtor is only required to show a future inability

to pay, and that we explicitly rejected such a standard when we adopted the *Brunner* test in *Pena*. Therefore, ECMC contends that future inability to pay has never been the standard for proving "undue hardship" in the Ninth Circuit. We disagree.

[5] In *Pena*, although we recognized the semantical difference in language employed between *Cheesman* and *Brunner*, we concluded that "[i]t does not appear that the Sixth Circuit in *Cheesman* was proclaiming a test distinct from *Brunner*." 155 F.3d at 1112. Accordingly, we reject ECMC's argument, but will set forth here the manner in which *Pena* and *Brunner* apply to a court's effort to predict a debtor's future income. We do not presume that an individual's present inability to make loan payments will continue indefinitely. Rather, we hold that the burden is on the debtor to provide the court with additional circumstances, i.e., "circumstances, beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period. The circumstances need be 'exceptional' only in the sense that they demonstrate insurmountable barriers to the debtors' financial recovery and ability to pay." *Nys*, 308 B.R. at 444.[7] However, although the trial court should look to "additional circumstances" to make this finding, the determinative question is whether the debtor's inability to pay will, given all we know about the salient features of her existence, persist throughout a substantial portion of the loan's repayment period.

---

[7]By "additional circumstances" or "exceptional circumstances" we mean only that the debtor must present something more than her current financial situation. In other words, she cannot rely on the fact that if she made payments now on her student loans, she would not be able to maintain a minimal standard of living. Rather, she must present the court with circumstances that she cannot reasonably change. To prove "undue hardship," the circumstances must indicate that the debtor cannot reasonably be expected to increase her income and make payments for a substantial portion of the loan's repayment period.

Under this standard, the debtor cannot purposely choose to live a lifestyle that prevents her from repaying her student loans. Thus, the debtor cannot have a reasonable opportunity to improve her financial situation, yet choose not to do so. *See Rifino*, 245 F.3d at 1089 (stating the bankruptcy court's factual finding that the debtor's financial situation was not likely to improve was clearly erroneous because, after she gained experience, the debtor would have opportunities to advance to higher paying positions within her profession). At the same time, we cannot fault the debtor for having made reasonable choices that now inhibit her ability to substantially increase her income in the future. *See Brunner*, 46 B.R. at 754 (relying on the Commission's report and its belief that the "undue hardship" test looks at what the "debtor could reasonably be expected to receive in the future").

**[6]** We agree with the BAP that neither *Brunner* nor *Pena* imposes a requirement that additional circumstances be "exceptional" in the sense that the debtor must prove a "serious illness, psychiatric problems, disability of a depend[e]nt, or *something* which makes the debtor's circumstances more compelling than that of an ordinary person in debt." *Nys*, 308 B.R. at 444 (internal quotation marks omitted). Undue hardship requires only a showing that the debtor will not be able to maintain a minimal standard of living now and in the future if forced to repay her student loans. We will presume that the debtor's income will increase to a point where she can make payments and maintain a minimal standard of living; however, the debtor may rebut that presumption with "additional circumstances" indicating that her income cannot reasonably be expected to increase and that her inability to make payments will likely persist throughout a substantial portion of the loan's repayment period.

Bankruptcy courts may look to the unexhaustive list of "additional circumstances" provided by the BAP in its published decision. *See Nys*, 308 B.R. at 446-47. The factors a court may consider include, but are not limited to:

[(1)] Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; [(2)] The debtor's obligations to care for dependents; [(3)] Lack of, or severely limited education; [(4)] Poor quality of education; [(5)] Lack of usable or marketable job skills; [(6)] Underemployment; [(7)] Maximized income potential in the chosen educational field, and no other more lucrative job skills; [(8)] Limited number of years remaining in [the debtor's] work life to allow payment of the loan; [(9)] Age or other factors that prevent retraining or relocation as a means for payment of the loan; [(10)] Lack of assets, whether or not exempt, which could be used to pay the loan; [(11)] Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; [(12)] Lack of better financial options elsewhere.

*Id.* (citations and footnotes omitted).

## IV

**[7]** The bankruptcy court erred in requiring Nys to show exceptional circumstances beyond the inability to pay in the present and a likely inability to pay in the future. We affirm the BAP's decision to reverse and remand the case back to the bankruptcy court to allow it to apply the correct legal standard. The bankruptcy court should consider whether Nys has shown that her inability to pay will likely persist throughout a substantial portion of her loans' repayment period. We express no opinion as to whether Nys has established entitlement to a partial or complete discharge. The bankruptcy court must determine the merits of her claim by applying the correct legal standard and all three *Brunner* prongs to the factual record.**[8]**

---

**[8]**It may be that Nys is entitled to only a partial discharge due to the amount of the debt and the unlikelihood that her income will increase sub-

On remand, the bankruptcy court must also determine whether Nys has made a good faith effort to repay her student loans, since all three prongs of the *Brunner* test must be met before a court can make a finding of undue hardship. *See Rifino*, 245 F.3d at 1087-88. This determination will require the bankruptcy court to consider the evidence regarding the Ford program, and whether Nys, in good faith, considered consolidation options. *See Alderete v. Educ. Credit Mgmt. Corp.* (*In re Alderete*), 412 F.3d 1200, 1206 (10th Cir. 2005) (agreeing that "[although] participation in a repayment program is not required to satisfy the good-faith prong" it is considered "an important indicator of good faith" (internal quotation marks omitted)).

The decision of the Bankruptcy Appellate Panel is AFFIRMED.

---

stantially between now and her retirement. Nys conceded that she has the ability to pay a portion of the debt. Therefore, on remand, the bankruptcy court should consider whether Nys is entitled to only a partial discharge. *See Saxman v. Educ. Credit Mgmt. Corp.* (*In re Saxman*), 325 F.3d 1168, 1175 (9th Cir. 2003) (holding that before a bankruptcy court can use its equitable powers under 11 U.S.C. § 105(a) to partially discharge a student loan, it must find undue hardship).