*662 MEMORANDUM *
Debtor Christian D. Mendoza appeals the judgement entered by the bankruptcy court on June 11, 2003 disallowing the discharge of his student loan debt. The Bankruptcy Appellate Panel (BAP) affirmed, agreeing with the bankruptcy court that Mendoza had not presented sufficient evidence of “additional circumstances” to indicate that his state of affairs could not improve. We review the bankruptcy court’s findings of fact for clear error and its application of the appropriate legal standard de novo. In re Rifino, 245 F.3d 1083, 1086 (9th Cir.2001). We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1), and we reverse.
To be eligible for discharge of a student loan, a debtor must demonstrate that “excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor’s dependents.” 11 U.S.C. § 523(a)(8). Undue hardship is demonstrated by a debtor who: (1) cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; (2) shows that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) has made a good faith effort to repay the loans. In re Pena, 155 F.3d 1108, 1111 (9th Cir.1998) (citing Brunner v. New York State Higher Educ. Services Corp., 831 F.2d 395, 396 (2d Cir.1987)). “[T]he determinative question is whether the debtor’s inability to pay will ... persist throughout a substantial portion of the loan’s repayment period.” In re Nys, 446 F.3d 938, 946 (9th Cir.2006).
Mendoza was diagnosed with Acquired Attention Deficit Disorder (ADD) in 1998 and was unable to complete medical school as a result of his condition. The total balance on Mendoza’s student loan debt as of October 2001 was $127,567 with monthly payments due of $1,028. He works in real estate devoting forty to fifty hours a week contacting people about possible home loan refinancing. The bankruptcy court found that Mendoza earned approximately $1,600 a month for his work. His monthly expenses, largely from medical bills, exceeded $1,650. The bankruptcy court thus found that Mendoza could not maintain a minimum standard of living for himself if forced to repay his student loans.
The bankruptcy court also found, however, that the evidence at trial did not establish that Mendoza’s current inability to pay was likely to persist for a significant portion of the repayment period. The bankruptcy court concluded that Mendoza had failed to establish that he would suffer “undue hardship” if his student loan debt was not discharged. A factual finding is ‘clearly erroneous’ when a reviewing court “is left with the definite and firm conviction that a mistake has been committed.” Easley v. Cromartie, 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Here, the record clearly demonstrates that Mendoza’s ADD is a substantial barrier that prevents him from improving his state of affairs. The bankruptcy court’s contrary findings were clearly erroneous.
Mendoza’s ADD condition is severe. Mendoza’s treating physician, Dr. Duke Fisher, testified that Mendoza suffers from tangential thinking, that he is easily distracted and forgetful, and that Mendoza’s *663 ADD is among the most severe five percent of the doctor’s patients diagnosed with the disorder. Dr. Fisher also testified that Mendoza’s condition has gradually deteriorated to the point that he may require a structured environment in the future.
The record demonstrates that Mendoza’s medical condition has had a deleterious impact on his life. Despite his every effort to succeed in real estate, Mendoza earned $11,329 in 1998, $10,065 in 1999, $13,360 in 2000, $17,002 in 2001, and $13,025 in 2002. Mendoza also has had intermittent periods of homelessness, including one month during which he lived in his car. Thus, the bankruptcy court’s finding that Mendoza is “capable of earning funds in the real estate business” is contradicted by evidence that Mendoza has lived at or below the poverty line since 1998.
Evidence in the record also demonstrates that, due to Mendoza’s medical disability, his current financial state of affairs is likely to persist throughout a substantial portion of the repayment period. Mendoza has no medical insurance and he is unable to afford the cost of his prescription medication or even basic dental care. Although Mendoza is well educated, his educational successes preceded the onset of his disability, and Dr. Fisher testified that his ADD condition now interferes with his ability to think, to concentrate, and to work effectively. Mendoza’s efforts to find alternate employment have also met with failure. He was fired from a job as a forklift operator after causing two accidents in a three week span. Now in his fifties and suffering from a severe medical disability, there is nothing in the record to suggest that Mendoza’s ability to earn greater income in the future will improve during the repayment period.
The bankruptcy court found that it was “entirely possible that [Mendoza’s] condition could be improved if he were to regularly take medication.” However, in order for Mendoza to consistently take medication for ADD, he must regularly see a doctor to obtain a monthly prescription, and he must follow the prescription regimen regularly. The bankruptcy court relied on testimony from Dr. Fisher indicating that Mendoza was doing neither and therefore was inhibiting his course of treatment for ADD.
The bankruptcy court’s finding is not supported by Dr. Fisher’s testimony. As Dr. Fisher explained, Mendoza’s severe ADD condition—often exhibited as extreme forgetfulness in such patients — likely contributed to his inability to take his medication and make doctor’s visits with requisite regularity. The court’s finding also overlooked evidence that Mendoza was financially incapable of visiting his physician on a monthly basis to continue renewing his prescription. A factual finding is clearly erroneous if it is without adequate support in the evidentiary record. Ritter v. Morton, 513 F.2d 942, 949 (9th Cir.1975). The bankruptcy court’s conclusion that Mendoza’s circumstances could improve by following a regular course of treatment for ADD is a “pie in the sky” assessment that finds no support in the record.
The bankruptcy court discounted Dr. Fisher’s testimony because the doctor “conceded that his opinion regarding Mendoza’s employability would change if he had known that Mendoza earned money from the real estate business.” Dr. Fisher’s testimony was taken out of context. Dr. Fisher testified that his opinion as to Mendoza’s employability depended upon “how well [Mendoza was] functioning at that job” and “the amount of money [Mendoza] generate[d].” Dr. Fisher explained that “somebody [who] has gotten a [real estate] license or [who] is able to work” is *664 not necessarily employable if “the amount of money they generate is practically nil.” Here, the evidence showed that Mendoza did not function well and did not earn sufficient income to sustain himself over a number of years. Dr. Fisher’s testimony, therefore, did not undercut his own opinion.
Finally, the bankruptcy court found that Mendoza’s own testimony indicated that his circumstances might improve because Mendoza admitted that “he was not trying very hard.” The bankruptcy court referenced the 1999-2000 period during which Mendoza testified to spending a significant amount of time oil painting rather than pursuing employment options. The record demonstrates, however, that Mendoza has since worked forty to fifty hours per week seeking fees on home refinancing for minimal pay, and he has sought other employment without success. Nothing in the record supports the bankruptcy court’s statement that if Mendoza were to “try harder” his situation might improve. On the contrary, the evidence overwhelmingly shows that Mendoza has tried all that he can, and that the circumstance of his medical disability prevents his financial situation from improving.
We conclude that on the basis of the record, the bankruptcy court’s factual determination that Mendoza’s inability to pay his student loans will not persist throughout a substantial portion of the repayment period was clearly erroneous. We note that the bankruptcy court did not proceed to the third step of the Pena inquiry. Accordingly, we reverse and remand with direction that the bankruptcy court determine on the basis of the existing record whether Mendoza has made a good faith effort to repay his student loans, and to grant relief if it so finds.
REVERSED and REMANDED.[1]

 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36-3.

. We note that there appears to be little question in the record that Mendoza exhibited good faith in attempting to pay back his student loans. He started making payments on his student loan obligations in 1994, and requested deferments starting in 1998. Since 1998, he has been unable to earn an income above the poverty level, despite his best efforts to succeed, first in commercial real estate, then as a forklift driver, and now as a real estate loan broker. Cf. Brunner, 831 F.2d at 397 (holding that petitioner did not make a good faith attempt to repay her student loans where she filed for discharge within a month of the date the first payment of her loans came due and did so without first requesting a deferment of payment).