FILED

OCT 09 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   WW-14-1551-FJuKi |
| | ) | |
| NICOLE NG-A-QUI, | ) | Bk. No.   13-18196-MLB |
| | ) | |
| Debtor. | ) | Adv. No.   13-01591-MLB |
| _____ | ) | |
| NICOLE NG-A-QUI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| COLLEGE ASSIST, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on September 25, 2015
at Seattle, Washington

Filed – October 9, 2015

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc L. Barreca, Bankruptcy Judge, Presiding

Appearances:   Appellant Nicole Ng-A-Qui argued pro se.

Before: FARIS, JURY and KIRSCHER, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Appellant Nicole Ng-A-Qui ("Appellant" or "Ms. Ng-A-Qui") appeals from the bankruptcy court's judgment under 11 U.S.C. § 523(a)(8) (2010)[1] that declined to discharge her debt to Appellee College Assist ("Appellee" or "College Assist"). Essentially, Ms. Ng-A-Qui argues that the bankruptcy court erred when it determined that she would not suffer "undue hardship" if the court did not discharge her student loans. Although we disagree with the bankruptcy court's analysis in one respect, we agree that Ms. Ng-A-Qui did not establish "undue hardship." Accordingly, we AFFIRM.

**FACTUAL AND PROCEDURAL BACKGROUND**

In September 2013, Ms. Ng-A-Qui filed a petition for chapter 7 bankruptcy. Shortly thereafter, she initiated an adversary proceeding seeking the discharge of her student loans under § 523(a)(8). The bankruptcy court held a one-day trial on June 30, 2014, in which Ms. Ng-A-Qui was the only witness.

On September 19, 2014, the bankruptcy court issued its oral ruling. The bankruptcy court made the following eight findings of fact:

(1) Ms. Ng-A-Qui is 40 years old, unmarried, and has three children, ages 17, 3, and 1. Neither she nor any of the children are disabled.

(2) After receiving her Bachelor of Science degree in

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

Natural Resource Management in 1996, Ms. Ng-A-Qui took out two $5,000 student loans to continue her higher education. In 1998, she discontinued her studies. In 2004, she executed a promissory note for a consolidation loan. The promissory note has a current outstanding balance of $16,000 with interest accruing at 4.25 percent. College Assist is the holder of the note, and since 2004, Ms. Ng-A-Qui has paid $1,240 on the loan debt.

(3) Ms. Ng-A-Qui is aware that she can enter into an Income-Based Repayment plan, which College Assist believes would be feasible. However, she has chosen not to apply, because she currently has no income and, based on her employment history, believes that she cannot secure stable employment.

(4) Ms. Ng-A-Qui pursued a number of temporary jobs before settling in Washington State in 2000. She worked in a daycare facility from 2000 to 2001 for $12 per hour. From 2001 to 2006, she worked as a substitute teacher for $100 per day or $45 to $50 per half-day. During that same period, she worked as a park ranger for $14 per hour and as a landscape technician for $12 per hour. Between 2004 and 2008, Ms. Ng-A-Qui ran her own business, which did not generate more than $5,000 in any given year. From 2007 to 2008, she worked for Turning Leaf Tree Service and Seattle Tree Preservation for $20 per hour, but left her job because of an injury. In 2008, she worked in a temporary position for the City of Seattle, earning $25 per hour, but lost that job due to lack of funding. From 2009 to 2010, she worked for the City of Bellevue for $22 per hour. She was eight months pregnant when she was laid off. From 2010 to 2012, Ms. Ng-A-Qui was unemployed. She began working at ArborMetrics in 2012, but

3

voluntarily left that job because it was too strenuous and she was pregnant with another child. She has not worked from 2012 to the present and has been staying at home to care for her children.

(5) Ms. Ng-A-Qui recently began applying for jobs again and exploring other income-producing activities, such as teaching music. However, she does not expect to obtain a job in her field, as she believes that her degree is outdated. She is looking for a job that pays at least $1,300 per month to cover the cost of daycare for her children.

(6) Ms. Ng-A-Qui has no employment income, but receives child support of $260 per month from the father of her eldest child and Women Infants and Children ("WIC") Supplemental Nutrition Program benefits of $50 to $100 per month. Mr. Labrum, the father of her two younger children, provides her with $1,500 per month for food and rent. The cost of rent is $1,300 per month, including $150 a month for a horse that she keeps on the property that she rents. Ms. Ng-A-Qui has decided not to pursue child support from Mr. Labrum, because she believes that he is paying more than what she could get in child support, and she does not want to create animosity. She has not filed for food stamps, because it would interfere with her arrangement with Mr. Labrum. She is ineligible for unemployment benefits. Considering the payments from her ex-partners and WIC, Ms. Ng-A-Qui's estimated monthly income is between $1,910 and $1,960.

(7) Ms. Ng-A-Qui's current expenses differ from those listed in Schedule J in minor regards. First, her current monthly

4

expenses are approximately $2,655. Second, in addition to rent and food expenses paid by Mr. Labrum, Ms. Ng-A-Qui pays $55 per month for internet and phone service, $190 per month for her pet horse, $150 per month for insurance for two cars, $80 per year for two car registrations, $25 per month for school activities for her children, and $200 every three to four months for Amway purchases. She has cancelled her YMCA membership of $30 per month, and a $600 expense for her child's band camp was paid by her mother. As a result, Ms. Ng-A-Qui has a monthly budget deficit of $695 to $745. She does not expect a substantial increase in expenses in the future and expects her expenses to decrease as her children leave the household.

(8) Ms. Ng-A-Qui lives a modest lifestyle and has attempted to mitigate her expenses. For example, she tried to sell the horse, but it was unmarketable; she has eliminated expenses related to horse tack and shows; she moved the horse to a pasture where she lives; she cancelled her YMCA membership; she does not own a cell phone; she rarely dines out; and she will likely eliminate her Amway expenses.

The bankruptcy court thoroughly discussed the application of the legal standard to Ms. Ng-A-Qui's situation. The bankruptcy court stated that, under § 523(a)(8), student loan debt is excepted from discharge unless exception from discharge will impose undue hardship on the debtor and her dependents. There is no definition of "undue hardship" in the Bankruptcy Code, but the Ninth Circuit follows the three-part test in Brunner v. New York State Higher Education Service, 831 F.2d 395, 396 (2d Cir. 1987), which was adopted by Pena v. United Student Aid Funds, Inc.

5

(In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998). To obtain a discharge of student debt, the debtor bears the burden of proving all three prongs of the Brunner test: (1) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for the debtor and the debtor's dependents if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the loans; and (3) the debtor has made good faith efforts to repay the loans.

As to the first prong, the bankruptcy court stated that the debtor must show more than just tight finances. The first prong will only be satisfied where it would be "unconscionable" to require the debtor to increase his income or decrease his expenses. Ms. Ng-A-Qui has a monthly deficit of $695 to $745. She and her children live a modest lifestyle, and she has taken reasonable steps to decrease her expenses, but she generates no employment income. Her employment history demonstrates that she is capable of earning $25 per hour, but, assuming a continuation of other forms of income, even a full-time job at $14 per hour would cover childcare, cure her current budget deficit, and allow a modest repayment. Although Ms. Ng-A-Qui asserts that her degree is outdated, there is no evidence that she is completely unemployable in all fields. Regardless whether she is able to obtain a job in her desired field, she is capable of obtaining a job in general and generating some income. Therefore, the bankruptcy court held that it is reasonable to require Ms. Ng-A-Qui to increase her income of $0, and the first prong was not satisfied.

6

As to the second prong, the bankruptcy court stated that the determinative question is whether the debtor's inability to pay will persist throughout a substantial portion of the loan's repayment period. Educ. Credit Mgmt. Corp. v. Nys (In re Nys), 446 F.3d 938, 946 (9th Cir. 2006). The debtor must show that the additional circumstances are insurmountable. Id. Such additional circumstances may include serious mental or physical disability that prevents employment or advancement; lack of or severely limited education, or quality of education; limited number of years remaining in the debtor's work life to allow repayment; potential increase of expenses that outweigh any potential appreciation in value of the debtor's assets or increases in the debtor's income.

The bankruptcy court determined that Ms. Ng-A-Qui is a healthy, well-educated, and well-spoken individual. She has held multiple jobs in the past that ranged in salary from $12 to $25 per hour. Although she asserted that her degree is outdated, she provided no evidence that she has been or will be denied employment based on the age of her degree. Further, her work history indicates that she may be employable in other fields, such as child care and education. She has made only a minimal effort to seek employment in the last several years, but there is nothing to indicate that she could not obtain employment in the future. She has a present ability to work and will have a greater ability to work with reduced expenses as her children get older. For these reasons, the bankruptcy court held that the second prong was not satisfied.

As to the third prong, the bankruptcy court stated that the

7

debtor is required to show that she has made a good-faith effort to repay the debt.  Good faith is measured by the debtor's effort to obtain employment, maximize income, and minimize expenses. Pa. Higher Educ. Assistance Agency v. Birrane (In re Birrane), 287 B.R. 490 (9th Cir. BAP 2002).  The fact that the debtor has made no payments or has made some payments on the loan is not, in and of itself, dispositive.  However, a debtor's effort or lack thereof to negotiate a repayment plan is an important indicator of good faith.  Here, Ms. Ng-A-Qui failed to enter into an income-based-repayment plan, and such failure is indicative, but not dispositive, on the issue of bad faith.  She made payments totaling $1,240 since 2004, which is modest, but indicates a good-faith effort, despite a lack of substantial income.  With the exception of the past two years, she has made substantial efforts to obtain employment and maximize her income through a series of jobs.  Although she has not maintained a job for an extended period of time, such failure is due generally to budget cuts, the temporary nature of those positions, or Ms. Ng-A-Qui's life events, not through bad faith.  Her efforts to minimize expenses related to her horse and extracurricular activities are also indicative of good faith.  The bankruptcy court held that, after balancing the facts, the weight of the evidence supported a conclusion that Ms. Ng-A-Qui made good faith efforts to repay her loans, and the third prong of the Brunner test is satisfied.

Accordingly, the bankruptcy court held that, because Ms. Ng-A-Qui failed to meet the first and second prongs of the Brunner test, her student loans are not dischargeable under § 523(a)(8).  The bankruptcy court entered judgment against

8

Ms. Ng-A-Qui on October 8, 2014. Ms. Ng-A-Qui filed a motion for reconsideration with the bankruptcy court, but that motion was denied on October 28, 2014. Ms. Ng-A-Qui timely filed her notice of appeal to this Panel on November 12, 2014.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred in holding that the failure to discharge Appellant's student loan debt will not cause her or her dependents undue hardship under § 523(a)(8).

**STANDARDS OF REVIEW**

We review "the bankruptcy court's interpretation of the Bankruptcy Code de novo and its factual findings for clear error[.]" Hedlund v. Educ. Res. Inst. Inc., 718 F.3d 848, 854 (9th Cir. 2013) (quoting Miller v. Cardinale (In re DeVille), 361 F.3d 539, 547 (9th Cir. 2004)).

**DISCUSSION**

**A. Student loan debt can only be discharged under § 523(a)(8) upon a showing of "undue hardship."**

The bankruptcy court accurately stated the applicable standard for determining whether a student loan debt is dischargeable. Section 523(a)(8) provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
>
> . . . .
>
> (8) unless excepting such debt from

9

discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

§ 523(a)(8).

The Bankruptcy Code does not provide any definition of "undue hardship." The Ninth Circuit has adopted the three-part test set forth by the Second Circuit in Brunner, 831 F.2d at 396. See Pena, 155 F.3d at 1111-12 ("we join the Second, Third and Seventh Circuits and adopt the Brunner test to determine whether, pursuant to 11 U.S.C. § 523(a)(8)(B), a debtor in bankruptcy may discharge a student loan").[2] To demonstrate "undue hardship" and

---

[2] The Panel recognizes that there is some dissatisfaction with the Brunner test as a measure of undue hardship. In Roth v. Educ. Credit Mgmt. Agency (In re Roth), 490 B.R. 908 (9th Cir. BAP 2013), Judge Pappas authored a concurring opinion in which he urged the Ninth Circuit to abandon the Brunner test as "truly a relic of times long gone." 490 B.R. at 920 (Pappas, J., concurring). In his well-reasoned concurrence that traced the development of § 523(a)(8), the corresponding case law, and students' borrowing practices, Judge Pappas argued that the current test is too rigid and does not allow the bankruptcy court sufficient flexibility to consider all relevant factors. Id. at

(continued...)

10

obtain a discharge of a student loan, the debtor must establish three elements: (1) "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;" (2) "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans;" and (3) "that the debtor has made good faith efforts to repay the loans." Id. at 1111 (quoting Brunner, 831 F.2d at 396).

"The three Brunner prongs are not elements a court throws into a vial, and then mixes and spins to arrive at an amalgam called 'undue hardship.' Rather, they are stand-alone requirements." Roth, 490 B.R. at 916. The burden is on the debtor to prove each prong by a preponderance of the evidence. Nys v. Educ. Credit Mgmt. Corp. (In re Nys), 308 B.R. 436, 441 (9th Cir. BAP 2004), aff'd on other grounds, 446 F.3d 938 (9th Cir. 2006). "If the debtor fails to satisfy any one of these requirements, 'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'" Rifino v. United States (In re Rifino), 245 F.3d 1083, 1088 (9th Cir. 2001) (quoting Pa. Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F.3d

---

[2](...continued)
922. He concluded that the Ninth Circuit should "craft an undue hardship standard that allows bankruptcy courts to consider all the relevant facts and circumstances on a case-by-case basis to decide, simply, can the debtor currently, or in the near-future, afford to repay the student loan debt while maintaining an appropriate standard of living." Id. at 923. Nevertheless, as Judge Pappas acknowledged, the Ninth Circuit has adopted the Brunner test in whole, and we are bound to follow its precedent unless and until the Ninth Circuit directs otherwise.

11

298, 306 (3d Cir. 1995)).

**B.    The bankruptcy court erred in considering Appellant's ability to increase her income under the first prong of the Brunner test.**

Ms. Ng-A-Qui's first point of error takes issue with the bankruptcy court's holding that she can take steps to increase her income, thereby maintaining a minimal standard of living. She argues that her budget deficit of up to $745 per month evidences that her "income is insufficient to support the basic household expenses." Opening Br. at 3.

Under the first prong of the Brunner test, the debtor must prove, based on her current income and expenses, that she cannot maintain a minimal standard of living if forced to repay her loans. See Birrane, 287 B.R. at 494-95. The debtor must show more than simply tight finances. United Student Aid Funds v. Nascimento (In re Nascimento), 241 B.R. 440, 445 (9th Cir. BAP 1999). "In defining undue hardship, courts require more than temporary financial adversity but typically stop short of utter hopelessness." Id.

The bankruptcy court, Ms. Ng-A-Qui, and College Assist all directly or indirectly cite the BAP's decision in Nascimento for the proposition that, under the first prong, "[t]he proper inquiry is whether it would be 'unconscionable' to require the debtor to take steps to earn more income or reduce her expenses." See Opening Br. at 3; Answering Br. at 6. Indeed, citing Birrane (which quoted the operative language from Nascimento) and Weldon v. Sallie Mae, Inc. (In re Weldon), No. Co8-5665-RBL, 2009 WL 1034928 (W.D. Wash. Apr. 16, 2009), the bankruptcy court also stated that the first prong will only be satisfied when it would

12

be "unconscionable" to require the debtor to increase her income or decrease her expenses. The bankruptcy court concluded that although Ms. Ng-A-Qui has a budget deficit of $695 to $745 per month, she is capable of obtaining some type of employment and generating some income. Therefore, it held that Ms. Ng-A-Qui failed to satisfy the first prong, because it was reasonable to require her to increase her income of $0.

However, the Ninth Circuit has stated that it has never required a showing of maximization of income to satisfy the first prong. In rejecting such an interpretation of Nascimento, the Ninth Circuit stated:

> Even if we were to reach the argument [that the bankruptcy court erred because Mason failed to establish that he maximized his income], however, ECMC's contention that Mason **must establish that he maximized his income in order to meet the first prong of Brunner does not find support in the case law**. Although ECMC claims that United Student Aid Funds, Inc. v. Nascimento (In re Nascimento), 241 B.R. 440 (B.A.P. 9th Cir. 1999), requires that Mason prove that he has maximized his income, **Nascimento appears to impose no such requirement**. See In re Nascimento, 241 B.R. at 444-45. In any event, **even if Nascimento could be read to require a debtor to prove that he maximized his income to meet the first prong of the Brunner test, we have not specifically imposed such a requirement**. See In re Rifino, 245 F.3d at 1088 (requiring only that debtor prove she could not maintain a minimal standard of living based on her current income and expenses); In re Pena, 155 F.3d at 1112-13 (determining whether first prong of Brunner test was met by subtracting debtor's average monthly expenses from their net monthly income). Accordingly, ECMC's contention fails.

Educ. Credit Mgmt. Corp. v. Mason (In re Mason), 464 F.3d 878, 882 n.3 (9th Cir. 2006) (emphases added).

13

Based on Mason, the bankruptcy court erred in requiring Ms. Ng-A-Qui to prove that, under the first prong, she could not increase her income. Rather, the Brunner test, as interpreted by the Ninth Circuit, requires only that a debtor cannot maintain a minimal standard of living based on her **current** income and expenses. See Rifino, 245 F.3d at 1088. The first prong does not require that she must maximize her income. As such, based on the bankruptcy court's findings that Ms. Ng-A-Qui's current expenses exceed her income by approximately $700 per month, Ms. Ng-A-Qui satisfies the first prong of the Brunner test.

Some courts within this circuit have relied on Nascimento or Birrane for the proposition that the first prong will only be satisfied when it would be "unconscionable" to require the debtor to increase her income or decrease her expenses. See, e.g., Educ. Credit Mgmt. Corp. v. Rhodes, 464 B.R. 918, 923 (W.D. Wash. 2012) (holding that the bankruptcy court erred in holding that the debtor satisfied the first prong, inasmuch as it had reached the "unavoidable conclusion that Mr. Rhodes has elected not to maximize his income"); Weldon, 2009 WL 1034928, at *3 (citing Birrane and Nascimento in holding that the bankruptcy court did not err in holding that the debtor could seek employment to increase her income); Educ. Credit Mgmt. Corp. v. DeGroot, 339 B.R. 201, 207 (D. Or. 2006) (a debtor "must show that 'it would be "unconscionable" to require [her] to take steps to earn more income or reduce her expenses.'"). Indeed, the confusion appears to stem from Nascimento's reliance on Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish), 72 F.3d 298 (3d Cir. 1995), which, in turn, made a passing reference to

14

*Matthews v. Pineo*, 19 F.3d 121, 124 (3d Cir. 1994), cert. denied, 513 U.S. 820 (1994), for the proposition that a debtor's "current income and . . . expenses should [not] be regarded as unalterable. Instead, the proper inquiry is whether it would be 'unconscionable' to require [the debtor] to take any available steps to earn more income or to reduce her expenses." However, *Matthews* discussed unconscionability in the context of discharge under 42 U.S.C. § 254o(d)(3)(A), not § 523(a)(8) or the *Brunner* test.

We are bound to follow the Ninth Circuit's holding that the first prong does not require a debtor to maximize her income. Thus, we hold that *Mason* forecloses an interpretation that *Birrane* or *Nascimento* requires a showing of income maximization under the first prong of the *Brunner* test.

This is not to say, however, that a debtor's potential income is irrelevant to the determination of undue hardship. Rather, the Ninth Circuit has considered the debtor's ability to increase her income both as evidence of additional circumstances under the second prong, see *Nys*, 446 F.3d at 947 (under the second prong, a court may consider a debtor's "[m]aximized income potential"), as well as evidence of a lack of good faith under the third prong, see *Hedlund*, 718 F.3d at 852 ("Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." (quoting *Birrane*, 287 B.R. at 499)). In other words, the bankruptcy court erred, not by considering the debtor's potential income, but rather by

15

considering it under the incorrect prong of the three-part test.[3]

## C. The bankruptcy court did not err in holding that Appellant's financial hardships are unlikely to persist.

For her second point of error, Ms. Ng-A-Qui contends that, because she has been chronically unemployed and believes her degree is outdated, she is unlikely to obtain employment to increase her income and improve her circumstances.[4] She argues that her difficult financial situation will persist for the life of the loan repayment period.[5]

Under the second prong of the Brunner test, Ms. Ng-A-Qui must establish "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans[.]" Brunner, 831 F.2d at 396. This requirement is intended to effect "the clear congressional intent exhibited in section 523(a)(8) to

---

[3] Although Ms. Ng-A-Qui argues at length in her opening brief and reply brief that she has adequately minimized her expenses--including costs relating to her horse, childcare, and recreation--the issue of minimization of expenses is not relevant to this appeal. The bankruptcy court decided this factor in her favor, determining that she has taken reasonable steps to decrease expenses. The bankruptcy court did not require that she reduce expenses any further.

[4] The arguments submitted under the first prong related to Ms. Ng-A-Qui's employability are more appropriately considered under the second prong, as discussed above. As such, we consider Ms. Ng-A-Qui's and College Assist's arguments and the bankruptcy court's conclusions as to maximization of income under the second prong.

[5] The bankruptcy court inquired as to the length of the repayment period. Counsel for College Assist represented that Ms. Ng-A-Qui would reenter the standard repayment plan, which is 10 years.

16

make the discharge of student loans more difficult than other nonexcepted debt." Id. "Requiring . . . additional exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'" Id.

Regarding the "additional circumstances," the Ninth Circuit has recognized

> that courts have found it difficult to predict future income. Consequently, courts have required debtors to present "additional circumstances" to prove that their present financial situation will persist well into the future, preventing them from making payments throughout a substantial portion of the loans' repayment period. . . . These "additional circumstances" are meant to be objective factors that courts can consider when trying to predict the debtor's future income; the debtor does not have a separate burden to prove "additional circumstances," beyond the inability to pay presently or in the future, which would justify the complete or partial discharge of her student loans.

Nys, 446 F.3d at 945 (citation omitted). The court does not "presume that an individual's present inability to make loan payments will continue indefinitely." Id. at 946. Rather, the debtor must provide the court with "circumstances, beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period. The circumstances need be 'exceptional' only in the sense that they demonstrate insurmountable barriers to the debtors' financial recovery and ability to pay." Id. (citation omitted). The "additional circumstances" that a court may consider include, but are not limited to:

[(1)] Serious mental or physical disability

17

of the debtor or the debtor's dependents which prevents employment or advancement; [(2)] The debtor's obligations to care for dependents; [(3)] Lack of, or severely limited education; [(4)] Poor quality of education; [(5)] Lack of usable or marketable job skills; [(6)] Underemployment; [(7)] Maximized income potential in the chosen educational field, and no other more lucrative job skills; [(8)] Limited number of years remaining in [the debtor's] work life to allow payment of the loan; [(9)] Age or other factors that prevent retraining or relocation as a means for payment of the loan; [(10)] Lack of assets, whether or not exempt, which could be used to pay the loan; [(11)] Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; [(12)] Lack of better financial options elsewhere.

Id. at 947 (citation omitted).[6]

Ms. Ng-A-Qui argues that the bankruptcy court's ruling on the second prong was erroneous for several reasons. Although Ms. Ng-A-Qui has thoroughly articulated her arguments, we must disagree.

**1.    Employment history**

Ms. Ng-A-Qui argues that "the court failed to take note that she has never found any substantial employment in the field of her study," and "[t]here is no prospect of a drastic increase in

---

[6] Ms. Ng-A-Qui contends that "[t]he court has clearly erred in only taking into [account] other factors relating to the additional circumstances. In Brunner the court has stated accordingly that pursuant to the statute that there is an inexhaustible list of factors to be considered." Opening Br. at 4; see Reply at 4-5. It is unclear what error she is alleging, or what "other factors" the court allegedly considered or did not consider. She appears to draw largely from the factors laid out in Nys, so we can detect no error as to this point.

18

income." Opening Br. at 4.[7] But the bankruptcy court did consider her history of unemployment or underemployment. In its findings of fact 3 and 4, the bankruptcy court accurately recounted her periods of employment and unemployment based on her testimony at trial. The court considered this history in reaching its conclusions of law as to the first and second prongs of the <u>Brunner</u> test; it held that, even though Ms. Ng-A-Qui has had difficulty finding employment in her chosen field, she is healthy, well-educated, and well-spoken, and she could find employment in other fields. The court also noted that Ms. Ng-A-Qui made only two attempts to obtain employment since 2012, but there is nothing indicating that she could not obtain employment in the future. The bankruptcy court did not err in considering her history of unemployment and underemployment.

### 2. Self-imposed limitations on likely future income

Ms. Ng-A-Qui challenges the bankruptcy court's ruling that she is likely able to obtain employment to increase her income and improve her situation. Although we recognize the hardships facing Ms. Ng-A-Qui, we find no error in this decision. It appears that Ms. Ng-A-Qui has sought only jobs that (1) are within her field of study, (2) are located "in the geographical confines within which she chose to live," and (3) pay at least

---

[7] Ms. Ng-A-Qui also states that "[t]he court would take note that if the Plaintiff did in fact acquire gainful employment the child support would be reduced accordingly; thereby equalizing any gains or increase in income. So, the Plaintiff would remain substantially in the same predicament." Opening Br. at 4. However, she did not present any evidence of the reduction of child support before the bankruptcy court, and, therefore, we cannot consider this argument on appeal.

$25 per hour.

A "debtor cannot purposely choose to live a lifestyle that prevents her from repaying her student loans. Thus, the debtor cannot have a reasonable opportunity to improve her financial situation, yet choose not to do so." Nys, 446 F.3d at 946 (citing Rifino, 245 F.3d at 1089); see also Sederlund v. Educ. Credit Mgmt. Corp. (In re Sederlund), 440 B.R. 168, 174-75 (8th Cir. BAP 2010) ("A debtor is not entitled to an undue hardship discharge of student loan debts when his current income is the result of self-imposed limitations, rather than lack of job skills.").

Each of Ms. Ng-A-Qui's job criteria are self-imposed limitations that cut against her on the second prong of the Brunner test.

As the bankruptcy court correctly noted, Ms. Ng-A-Qui is educated, well-spoken, and probably able to find employment, although perhaps not within her chosen field. Cf. Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner), 46 B.R. 752, 757 (S.D.N.Y. 1985), aff'd, 831 F.2d 395 (2d Cir. 1987) ("Although she claimed to be unable to find any other type of work, the evidence presented at the hearing is too thin to support a finding that her chances of finding any work at all are slim, and I do not read the bankruptcy judge's decision as so finding."). The Panel recognizes Ms. Ng-A-Qui's past challenges in obtaining employment, but the fact that she has not recently found employment in her chosen field does not absolve her from seeking employment in other areas. See, e.g., Weil v. U.S. Bank, N.A. (In re Weil), Nos. 99-00272, 99-6222, 2000 WL 33712215, at

*4 (Bankr. D. Idaho June 29, 2000) ("[T]he evidence overwhelmingly suggests Fred cannot obtain employment in his field of study. However, while the Court believes Fred may not necessarily be able to obtain a job using his sociology/psychology background, the Court is not convinced Fred possesses disabilities that would prevent him from obtaining any kind of entry level position."); Price v. United States (In re Price), Bk. No. 79-390(1), 1980 Bankr. LEXIS 5422, at *6 (Bankr. D. Haw. Mar. 21, 1980) ("Even if she is not employed in the field in which she was trained, she can still seek other employment and obtain sufficient compensation for a comfortable living.").

Her choice to seek jobs only in Stanwood, Washington, is another impermissible unilateral limitation. Ms. Ng-A-Qui argues that the bankruptcy court did not consider the fact that she cannot relocate from Stanwood, because her sons' father would not allow it. However, she did not present any evidence in support of this argument and did not raise this issue before the bankruptcy court, so we do not consider it on appeal.

Finally, she has set her sights only on jobs paying at least $25 per hour and has ruled out lower-paying positions. As the bankruptcy court noted, even a lower-paying job would allow Ms. Ng-A-Qui to increase her standard of living and allow some form of repayment on the loans.

### 3. Potential for retraining

Ms. Ng-A-Qui argues that it would be "impossible" or "unconscionable" for her to undergo training to enter another profession. She testified at trial, however, that she is not

21

incapable of being retrained for a position other than landscaping. On appeal, she contends that it is "impossible" to "acquire retraining." Opening Br. at 5. The proffered reasons for rejecting retraining is that it is cost prohibitive and she would not be able to immediately earn $25 per hour. Ms. Ng-A-Qui did not offer any evidence at trial that retraining, including on-the-job training, would be cost prohibitive. Indeed, she was able to afford further training in her field in 2003 and 2004 to receive an Arborist Certification through the International Society of Arboriculture and a Restoration Ecology Certificate from the University of Washington. Moreover, as discussed above, she appears to be limiting herself to a $25-per-hour job, when she may be able to obtain a lower-paying job. Thus, the record supports the bankruptcy court's holding that Ms. Ng-A-Qui could increase her income through additional career training or a change in profession.

### 4. Effect of Appellant's age on likelihood of increased income

Ms. Ng-A-Qui argues that her age is an insurmountable barrier to increasing her income. She argues that the bankruptcy court erred in failing to consider "what she would have to do in order to make herself marketable again at 44 years of age for any other field or job that could make her viable for employment." Opening Br. at 6. She also contends that her younger children will be of college age when she is near retirement. Reply at 4. We see no reason why Ms. Ng-A-Qui's age presents an exceptional barrier to employment, especially when she appears well-educated and healthy. She is in her early forties, and she still has many

22

viable work years ahead of her.  Ms. Ng-A-Qui's age does not present an insurmountable barrier to increasing her income in the future.

### 5. Unchallenged findings on likely income increases and expense reductions

Ms. Ng-A-Qui does not challenge other findings of the bankruptcy court that support its decision.  For example, the bankruptcy court considered Ms. Ng-A-Qui's stated intention to return to the workforce once her children reach school age.  Her youngest child was born in late 2012 and will presumably reach school age in two to three years.  She will be able to reenter the workforce then.  See Garybush v. U.S. Dep't of Educ. (In re Garybush), 265 B.R. 587, 592 (Bankr. S.D. Ohio 2001) ("While the Debtor cannot obtain paid employment at this time, she is a healthy 35 year old woman who could return to work once her children are all of school age.  Her youngest child will reach school age in less than four years. . . . Debtor's current inability to pay is unlikely to last into the future once her children are of school age.").  Her financial situation will not persist through the life of the debt, because, by her own statements, she will return to work and increase her income.

Furthermore, Ms. Ng-A-Qui testified at trial that her expenses will decrease as her children get older and her pets pass away.  She testified that her daughter recently graduated from high school and may move out to live with her boyfriend.  Such changes will likely reduce Ms. Ng-A-Qui's expenses and improve her financial situation over the life of the loan repayment period.

23

Therefore, we hold that the bankruptcy court did not err in holding that Ms. Ng-A-Qui's situation is unlikely to persist for the entire life of the loan. "What separates a 'garden-variety debtor' from a debtor who can show 'undue hardship' is the realistic possibility that a 'garden-variety debtor' could improve her financial situation in the future." Nys, 446 F.3d at 944. Although we are sympathetic to Ms. Ng-A-Qui's situation and appreciate her candor at the oral argument, the record shows that she is capable of working and her financial situation will likely improve once she returns to the workforce. She thus has not satisfied the second prong of the Brunner test and is unable to demonstrate requisite undue hardship.

## CONCLUSION

A reasonable person could disagree with Congress's decision to make it difficult to discharge student loan debt. A reasonable person could also disagree with Brunner's interpretation of the Congressional standard. But we are bound by the Congressional enactment of § 523(a)(8) and the Ninth Circuit's adoption of the Brunner test.

For the reasons set forth above, we hold that the bankruptcy court erred in requiring Ms. Ng-A-Qui to maximize her income under the first prong of the Brunner test, but did not err in holding that her situation will improve under the second prong of the test. Thus, because Ms. Ng-A-Qui did not establish all three prongs of the Brunner test, we AFFIRM the bankruptcy court's nondischargeability judgment.

24